# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00173-CR

**Brian Taylor, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
### NO. 38660, HONORABLE DANIEL H. MILLS, JUDGE PRESIDING

## O P I N I O N

Brian Taylor was charged with two counts of indecency with a child by contact. *See* Tex. Penal Code § 21.11(a)(1) (setting out elements of offense). The victim in this case, G.S., was the daughter of Taylor's girlfriend, and she was twelve years old at the time of the offenses. Prior to his arrest, Taylor went to the police station to discuss the case. During his interview with the police, Taylor admitted that he had sexual intercourse with G.S. in another county and later admitted that he also touched G.S. in a sexual manner on different occasions. A video recording of his interview with the police was admitted into evidence during the trial. At the end of the guilt or innocence phase, the jury found Taylor guilty of both counts.

During the punishment phase, Taylor entered pleas of not true to enhancement allegations asserting that he had been previously convicted of prior felony offenses, and the State introduced pen packets regarding those prior offenses. *See Davis v. State*, 268 S.W.3d 683, 715

(Tex. App.—Fort Worth 2008, pet. ref'd) (explaining that State may establish prior conviction alleged for enhancement purposes by introducing pen packets, which are certified copies of judgments and sentences). After considering the evidence presented during the punishment phase, the jury found beyond a reasonable doubt that Taylor had been previously convicted in Illinois of the felony offense of aggravated criminal sexual abuse. In light of the jury's determinations, the district court imposed a sentence of life imprisonment for each count. *See* Tex. Penal Code §§ 21.11(d) (explaining that indecency with child by contact is second-degree felony), 12.42(c)(2)(B) (mandating that defendant be sentenced to life imprisonment if he is convicted of indecency with child by contact and has previously been convicted of offense listed in statute).

In seven issues on appeal, Taylor contends that the district court erred by failing to conduct a hearing outside the presence of the jury regarding the admissibility of outcry statements made by G.S. to a counselor working for the Hill Country Children's Advocacy Center, by admitting outcry statements made by G.S. to the counselor regarding an extraneous act committed by Taylor, by failing to give the jury an instruction addressing the voluntariness of the statements that he made to the police during his interview, by admitting evidence regarding the statements that he made to the police, by failing to grant a mistrial after evidence referencing his polygraph exam was presented to the jury, by allowing into evidence pen packets that contained information showing how parole law and good-time credit had been applied to him previously, and by admitting evidence regarding the extraneous offense allegedly committed by him against G.S. We will affirm the district court's judgments of conviction. In reaching our decision, we will address Taylor's seventh issue after considering his first two issues for ease of reading but will address his remaining issues in the order briefed.

2

## STANDARD OF REVIEW

Although not all of the issues urged by Taylor require the same standard of review, most of the issues presented by Taylor are reviewed under an abuse-of-discretion standard. Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside the zone of reasonable disagreement, *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is arbitrary or unreasonable, *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the ruling will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

## DISCUSSION

### Hearing Regarding Outcry Statements

In his first issue on appeal, Taylor contends that the district court erred by failing to hold "a hearing outside the presence of the jury to determine the admissibility of outcry statements" made by G.S. to Amy Calloway, who worked for the Hill County Children's Advocacy Center. Those statements were admitted into evidence through the testimony of Calloway. When presenting this issue on appeal, Taylor notes that article 38.072 of the Code of Criminal Procedure authorizes the admission of outcry statements made by children under the age of fourteen who are the victims of sexual offenses, but Taylor asserts that before those statements may be admitted, the trial court is obligated to convene a hearing outside the presence of the jury and determine whether the statements are reliable. *See* Tex. Code Crim. Proc. art. 38.072. Specifically, the statute provides that

3

an outcry statement "is not inadmissible because of the hearsay rule if," among other things, the following conditions are satisfied: "the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement." *Id.* art. 38.072, § 2(b). On appeal, Taylor asserts that the district court did not make the requisite reliability finding or consider the factors provided by the legislature for that determination; on the contrary, Taylor contends that the district court improperly based its ruling on an agreement between the State and his trial attorney that the outcry testimony was reliable. Taylor insists that the agreement by the parties does not satisfy the requirements of article 38.072 and that the admission of the outcry statement through Calloway's testimony was improper, violated the requirements of article 38.072, and deprived him of a fair trial.[1]

---

[1] In his first, second, and seventh issues on appeal, Taylor asserts that the alleged errors are constitutional in nature and, accordingly, require that less harm be shown before a reversal is warranted. *See* Tex. R. App. P. 44.2. As support for the assertion, Taylor primarily refers to *Sanchez v. State*, 354 S.W.3d 476 (Tex. Crim. App. 2011). Although we do not reach the issue of harm in any of those issues and, accordingly, need not consider whether those issues are of a constitutional dimension, we note that Taylor's reliance on *Sanchez* seems misplaced. Unlike the present case, in *Sanchez*, the "outcry witness suffered a loss of mental faculties and was unavailable to testify at trial," and "the trial court allowed the outcry witness's testimony from a pre-trial hearing to be read to the jury" over Sanchez's objection. *Id.* at 478. The court of criminal appeals determined that a hearing held under article 38.072 "is intended only to determine the reliability of the complainant's out-of-court statement," that the "defendant's opportunity for cross-examining the outcry witness at such a hearing is inadequate to allow the admission of the hearing testimony at trial," and that "admitting testimony from an Article 38.072 hearing at a trial when the witness is unavailable violates the Sixth Amendment." *Id.* at 478, 489. In this case, the outcry witness was available to testify at trial and was subject to cross-examination by Taylor during trial. Moreover, Taylor's seventh issue concerns evidence of extraneous offenses under article 38.37 of the Code of Criminal Procedure, which is not an issue that the court in *Sanchez* addressed. *See* Tex. Code Crim. Proc. art. 38.37.

4

Although Taylor argues on appeal that the district court did not make a reliability determination or consider the relevant factors, the record before this Court reveals that he made no objection regarding the admission of the outcry statements either during the pre-trial hearing held outside the presence of the jury or during Calloway's testimony at trial. On the contrary, during the pre-trial hearing, Taylor agreed with the State that the outcry statement was reliable. Specifically, the record shows that the following exchange occurred:

> [State]: And then the last issue we can handle really quickly is the outcry witness, the hearing on the outcry witness. I think [Taylor] is willing to stipulate it was done at the Hill Country CAC, Children's Advocacy Center. The same protocols to ensure the reliability of the statement were assured, that the alleged victim in this case understood what the truth was, understood what a lie was, was able to communicate to the interviewer. The interview was done prior to indictment and prior to complaint for the arrest of the defendant and all of those protocols were followed to . . . show the reliability of the statement.
>
> [Taylor]: And we did -- they did give us access to the HCAC tapes with her and so we could -- I mean, you can clearly see where the outcry comes, so I don't have any problems with this outcry witness.
>
> [Court]: Okay. So that's just stipulated that whoever you've designated as your outcry witness is your outcry witness.
>
> [State]: Amy Calloway.
>
> . . .
>
> [State]: The only thing that we've got, Judge, we want to make sure that on the outcry witness -- that you ruled that the outcry witness is -- the reliability of the tape, that we've gone through the protocol and used the same protocol from the CAC, the Children's Advocacy Center, the Hill Country Children's Advocacy Center. I've discussed that with opposing counsel and that that – the normal protocol of assuring that the child knows the difference between the truth and a lie and the way she was able to articulate produces reliability of the tape and the outcry witness.

5

[Court]: And y'all made that representation to the Court this morning, but, [Taylor], you agree that that's all fine?

[Taylor]: I do, Your Honor.

[Court]: All right. So if I need to make a finding, I will make that finding based upon your agreement.

In light of the preceding, we must conclude that Taylor has waived any alleged error regarding the admission of evidence concerning the outcry statements. *See Thomas v. State*, No. 03-11-00254-CR, 2013 Tex. App. LEXIS 10661, at *4-5 (Tex. App.—Austin Aug. 23, 2013, no pet.) (mem. op., not designated for publication) (concluding that defendant did not preserve complaint that trial court did not convene article 38.072 hearing or make required findings because he did not object to trial court's alleged failure to continue hearing or object to testimony at trial); *Bradshaw v. State*, No. 03-10-00415-CR, 2012 Tex. App. LEXIS 6193, at *13 (Tex. App.—Austin July 26, 2012, pet. ref'd) (mem. op., not designated for publication) (determining that defendant waived complaints that outcry was unreliable and that no hearing was held because he failed to make these objections during testimony discussing outcry); *Garcia v. State*, 228 S.W.3d 703, 707 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (explaining that defendant waived complaint regarding lack of article 38.072 hearing by failing to request hearing); *Cates v. State*, 72 S.W.3d 681, 698 (Tex. App.—Tyler 2001, no pet.) (deciding that because defendant did not object to trial court's alleged failure to hold 38.072 hearing and because defendant did not request 38.072 hearing, defendant waived issue on appeal); *see also* Tex. R. Evid. 802 (explaining that "[i]nadmissible hearsay admitted without objection may not be denied probative value merely because it is hearsay"); *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) (providing that trier-of-fact "is

6

entitled to give probative value to" hearsay evidence admitted without objection), *overruled in part on other grounds by Robinson v. State*, No. PD-0421-14, 2015 Tex. Crim. App. LEXIS 763, at *14 n.32 (Tex. Crim. App. July 1, 2015).

Moreover, although we need not discuss the issue further, we do note that during the pre-trial hearing held outside the presence of the jury, the State mentioned that protocols were used to ensure the reliability of the statement and to ensure that G.S. understood the difference between the truth and a lie, and Taylor agreed that the proper protocols were used. In addition, based on that agreement, the district court stated that it was making any finding necessary for the admission of evidence regarding the outcry. *See* Tex. Code Crim. Proc. art. 38.072. Finally, Taylor has not referred us to and we have been unable to find any authority standing for the proposition that parties cannot stipulate that the relevant reliability requisites were satisfied.

For all of these reasons, we overrule Taylor's first issue on appeal.

**Admission of Outcry Statements Regarding Extraneous Offense**

In a related set of arguments in his second issue, Taylor contends that during Calloway's testimony, she was improperly allowed to discuss statements made by G.S. regarding an extraneous offense that was not the subject of the trial and "that occurred on a different date and in a different county." Specifically, Calloway related that G.S. informed her that Taylor penetrated or attempted to penetrate her vagina with his penis when they were in his truck after stopping on the way to pick up Taylor's nephew. During the trial, Taylor argued that the testimony should not be admitted because it was hearsay, because the testimony addressed "a different offense," and because "that outcry is . . . different from the outcry" concerning the offenses at issue in this case. In

response, the State asserted that Calloway was the outcry witness for the extraneous offense as well and that the evidence was admissible under articles 38.072 and 38.37 of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. arts. 38.072 (allowing outcry witness to testify regarding statements made by child victim of sexual offense provided that certain criteria are satisfied), 38.37 (addressing admissibility of evidence of other crimes committed by defendant against child who is victim of alleged offense). When making its ruling, the district court explained "[o]n that representation . . . I overrule those objections and it's -- I'll admit it."

On appeal, Taylor contends that the district court erred by allowing Calloway to testify as an outcry witness regarding that extraneous offense without convening an article 38.072 hearing and without making a reliability determination regarding those outcry statements. However, as summarized above, Taylor did not object to the testimony on the grounds presented on appeal. Accordingly, we must conclude that Taylor has failed to preserve this issue for appeal. *See Thomas*, 2013 Tex. App. LEXIS 10661, at *4-5; *Bradshaw*, 2012 Tex. App. LEXIS 6193, at *13; *see also Garcia*, 228 S.W.3d at 707 (explaining that general objection on hearsay grounds does not preserve complaint that outcry testimony was not admissible because no hearing was convened outside presence of jury and because no reliability determination was made).

For these reasons, we overrule Taylor's second issue on appeal.

**Evidence of Extraneous Offense**

In his seventh issue on appeal, Taylor asserts that the district court abused its discretion "by admitting evidence of [the] extraneous offense" described above in which Taylor allegedly attempted to insert or did insert his penis into G.S.'s vagina on a trip to pick up his nephew.

8

*See Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010) (explaining that evidentiary rulings are reviewed for abuse of discretion). That offense was alleged to have occurred in another county weeks before the alleged offenses at issue in this case. During a pretrial hearing, Taylor argued that evidence regarding the extraneous offense should not be admitted under Rule of Evidence 403 because "any probative value is outweighed by the prejudice in this case and [because] the events are remote enough and different enough that 403 applies." *See* Tex. R. Evid. 403 (allowing trial court to exclude otherwise relevant evidence if probative value is substantially outweighed by danger of unfair prejudice). In response, the State argued that the probative value of the evidence is not outweighed by the danger of unfair prejudice under Rule 403 and that the evidence was admissible under article 38.37 of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. art. 38.37 (deeming evidence of extraneous acts between defendant and child victim admissible in trial for sexual offense). After the State responded, the district court overruled Taylor's objection and determined that the evidence was admissible under article 38.37.

On appeal, Taylor urges that the district court abused its discretion by admitting evidence regarding the extraneous offense without complying with the requirements of article 38.37. *See id.* Specifically, Taylor urges that the district court erred by failing to make a finding "that the evidence would be adequate to support a finding by the jury that [Taylor] committed the extraneous offense beyond a reasonable doubt" as required by sections 2 and 2-a of article 38.37. *Id.* art. 38.37, §§ 2, 2-a. Section 2 of the provision authorizes the admission of evidence showing that the defendant has committed a separate sexual offense "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the

9

character of the defendant," *id.* art. 38.37, § 2(b); however, before evidence may be admitted under that section, the trial court is obligated to "conduct a hearing outside the presence of the jury for" the purpose of determining whether "the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt," *id.* art. 38.37, § 2-a.

As a preliminary matter, we note that Taylor did not object to the admission of the evidence during the trial under article 38.37 and instead asserted that the evidence should not be admitted under Rule of Evidence 403. Accordingly, it does not appear that Taylor preserved this issue for appeal. *See* Tex. R. App. P. 33.1(a)(1) (requiring party to make timely objection to preserve complaint for appeal); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (providing that appellate issue must comport with specific objection made at trial).

Even assuming that Taylor had preserved this complaint, we would still be unable to conclude that the district court abused its discretion by admitting evidence of the extraneous offense. Taylor is correct that section 2-a of article 38.37 requires a trial court to make a determination regarding the sufficiency of the evidence of an extraneous offense before the evidence is admitted under section 2. Tex. Code Crim. Proc. art. 38.37, § 2-a. Section 2 is a broadly written provision that allows the evidence to be admitted "for any bearing the evidence has on relevant matters," including proof of character conformity, and authorizes the admission of evidence that the defendant has committed sexual offenses against individuals other than the victim at issue. *Id.* art. 38.37, § 2. However, article 38.37 also authorizes the admission of evidence that the defendant has committed extraneous sexual offenses against the victim to be admitted for more limited purposes without

10

requiring a trial court to make a determination regarding the sufficiency of the evidence beforehand. Specifically, section 1 authorizes the admission of evidence of other crimes committed "by the defendant against the child who is the victim of the alleged offense" that is the subject of a trial for its bearing on "the state of mind of the defendant and the child" as well as "the previous and subsequent relationship between the defendant and the child." *Id.* art. 38.37, § 1(b).

Given that the extraneous offense at issue was committed by Taylor against G.S. and given that the crime alleged in this issue was indecency with a child by contact, we believe that the district court could reasonably have determined that evidence indicating that Taylor penetrated or attempted to penetrate G.S.'s vagina with his penis was relevant to Taylor's state of mind for the offenses at issue as well as the nature of the prior relationship between Taylor and G.S. and determined that the evidence was admissible under section 1 of article 38.37. *Id.*

As set out above, Taylor did object to the admission of the evidence under Rule 403. *See* Tex. R. Evid. 403. On appeal, Taylor contends that the district court abused its discretion by overruling his objection without conducting "a balancing test to determine if the danger of unfair prejudice substantially outweighed the probative value of the evidence as it was required to do." *See Mozon v. State*, 991 S.W.2d 841, 846 n.6 (Tex. Crim. App. 1999) (stating that once Rule 403 objection is made, "the trial court has no discretion as to whether or not to engage in the balancing process"). *But see Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd) (explaining that Rule 403 does not require that balancing analysis be on record and that when objection is overruled, there is presumption that trial court "applied a rule 403 balancing test and determined the evidence was admissible").

11

The evidence regarding the extraneous offense was admitted through the testimony of Officer Low, G.S., and Calloway. In addition, evidence of the offense was also introduced through a video recording of an interview of Taylor by Officer Low and through the admission of a transcript of that interview.

In his testimony, Officer Low explained that during his first conversation with Taylor, Taylor denied engaging in any improper sexual activity with G.S.; however, Officer Low related that during his second interview, Taylor "admitted to having intercourse with [G.S.] in a parking lot of the Marriott Hotel in Horseshoe Bay." Similarly, G.S. testified that on one occasion when she went with Taylor to pick up Taylor's nephew, Taylor attempted to have sex with her by trying to put his penis into her vagina. Regarding her interview with G.S., Calloway recalled that G.S. stated that Taylor touched her when they were "by the lake by a building with barbed wire and that she was usually half asleep when it happen[ed]" and that Taylor "raped me." Further, Calloway testified that G.S. stated that Taylor touched her everywhere, including her chest and groin area, with his hand and that Taylor used his penis to touch her vagina and attempted to penetrate her vagina.

On the video, Taylor admitted that he had sex with G.S. "right there at the Marriott" by the lake. More specifically, he stated that while they were in his truck, she started "playing with me," that "she got on top . . . and started taking her clothes down," that he raised the steering wheel up, that "they say I went inside but I didn't know I did—far as I knew it was just between her legs," that they moved to the other side of the truck when "we were doing it," and that he placed his penis in her vagina. In addition, Taylor stated that everything that G.S. had described about that event was true. Further, he clarified that he only had sex with G.S. on that one occasion but "you know her grabbin' and playin' and shit like that. It's been several times."

12

Although Taylor objected to the admission of evidence regarding the extraneous offense in a hearing before the trial, Taylor did not object to the evidence each time it was admitted during the trial. *See Mitchell v. State*, 68 S.W.3d 640, 643 (Tex. Crim. App. 2002) (explaining that if previously objected to evidence is introduced from another source without objection, defendant may not challenge admission on appeal). In particular, Taylor made no objection when the transcript of the video was admitted into evidence or during any of G.S.'s extensive testimony discussing the extraneous offense. Moreover, although Taylor stated "I'm just going to renew my objection that I had earlier to any other offenses" during the portion of Officer Low's testimony discussing information that he learned from Calloway, Taylor made no subsequent objection during Officer Low's testimony when he later testified regarding admissions that Taylor made during the interview, including that Taylor had sexual intercourse with G.S. in a hotel parking lot. Furthermore, although Taylor objected to Calloway's testimony on the grounds that her testimony concerning statements G.S. made was hearsay, pertained to a different offense that is not the subject of the trial, and was not proper outcry testimony, Taylor did not object to Calloway's testimony on Rule 403 grounds.[2] Accordingly, because the evidence regarding the extraneous offenses was admitted into evidence through multiple sources without objection, any error potentially stemming from the admission over Taylor's initial objection was cured. *See Luu v. State*, 440 S.W.3d 123, 127 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (providing that party must object every time inadmissible

---

[2] Taylor did object on Rule 403 grounds to the admission of a short video showing part of the interview of G.S. by Calloway. No statements concerning the extraneous offense or the offenses at issue were made on the video, and the propriety of the admission of that video is not an issue in this appeal.

evidence is offered or request running objection and that any error in admission of evidence is cured when evidence comes in without objection).

For all of these reasons, we overrule Taylor's seventh issue on appeal.

**Jury Instruction on Voluntariness**

In his third issue on appeal, Taylor asserts that the district "court erred by failing to give the jury an instruction regarding the voluntariness of [his] statement to police" in which he admitted to committing the offenses at issue as well as the extraneous offense discussed above. Specifically, Taylor requested an instruction stating that the jury could not consider as evidence any statement that he made "unless the evidence convinces you beyond a reasonable doubt that the statement was made voluntarily," but the district court denied that request.

When reviewing an alleged jury-charge error, appellate courts first determine whether an error exists. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If the court determines that there was an error, it then decides whether the error resulted in harm sufficient to warrant a reversal. *Kirsch*, 357 S.W.3d at 649; *Ngo*, 175 S.W.3d at 743. On appeal, Taylor asserts that the instruction should have been given under article 38.22 of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. art. 38.22, §§ 6, 7; *see also Oursbourn v. State*, 259 S.W.3d 159, 176 (Tex. Crim. App. 2008) (explaining that section 6 of article 38.22 applies "to *both* an accused's custodial and non-custodial statements").[3]

---

[3] On appeal, Taylor does not present a due-process claim asserting that his statement was the result of police overreach. *See Oursbourn v. State*, 259 S.W.3d 159, 169-70 (Tex. Crim. App. 2008) (discussing various types of arguments concerning whether statement was made voluntarily).

14

That provision provides that "[i]n all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions" and that if the court finds "as a matter of law and fact that the statement was voluntarily made, evidence pertaining to such matter may be submitted to the jury and it shall be instructed that unless the jury believes beyond a reasonable doubt that the statement was voluntarily made, the jury shall not consider such statement for any purpose nor any evidence obtained as a result thereof." Tex. Code Crim. Proc. art. 38.22, § 6.

"If a reasonable jury could find that the facts, disputed or undisputed, rendered [a defendant] unable to make a voluntary statement, he is entitled to a general voluntariness instruction when he has raised a question of the voluntariness of his statement." *Oursbourn*, 259 S.W.3d at 176. The defendant has the burden of producing "evidence at trial from which a reasonable jury could conclude that the statement was not voluntary," and "there is no error in refusing to include a jury instruction where there is no evidence before the jury to raise the issue." *Vasquez v. State*, 225 S.W.3d 541, 545 (Tex. Crim. App. 2007). When discussing the type of evidence that would warrant an instruction regarding the voluntariness of a statement made to police, the court of criminal appeals has listed the following types of evidence as "fact scenarios that can raise a state-law claim of involuntariness" under article 38.22: evidence that the suspect "was ill and on medication and that fact may have rendered his confession involuntary"; "was mentally retarded and may not have" voluntarily, intelligently, and knowingly waived his rights; lacked the capacity to comprehend his rights; was intoxicated, did not know what he was signing, and mistakenly believed that document signed was something other than a confession; "was confronted by the brother-in-law of his murder

15

victim and beaten"; and "was returned to the store he broke into" so that he could be questioned by individuals who were armed with pistols. *Oursbourn*, 259 S.W.3d at 172-73 (internal citations omitted). Further, the court of criminal appeals has determined that evidence that a suspect was bipolar and was in a manic or depressed state at the time that the statement was made sufficed to raise a general voluntariness question under article 38.22 "because a reasonable jury could conclude, based on this evidence, that the statement was not voluntary." *Id.* at 181; *see also id.* at 173 (explaining that although "youth, intoxication, mental retardation, and other disabilities are usually not enough, by themselves, to render a statement inadmissible under Article 38.22, they are factors that a jury, armed with a proper instruction, is entitled to consider"); *Vasquez v. State*, 179 S.W.3d 646, 658 (Tex. App.—Austin 2005) (explaining that facts that weigh against voluntariness determination include "lengthy interrogation, threats of violence, and detention incommunicado without advice of counsel or friends" as well as accused's age, "low intelligence," and "lack of education")*, aff'd*, 225 S.W.3d 541.

When arguing that he should have been given an instruction, Taylor notes that the interview lasted for several hours, that he was not given *Miranda* warnings, and that he was not expressly told that he was free to leave and asserts that those factors were present in a prior opinion by this Court in which we determined that a trial court erred by failing to give an instruction on voluntariness. *See Vasquez*, 179 S.W.3d 646.

Prior to the district court denying Taylor's request for the jury instruction during trial, Taylor moved to suppress the video on the ground that the statements that he made on the video were not voluntarily made. During a hearing outside the presence of the jury regarding

the voluntariness of Taylor's statements, Officer Low was called to the stand. In his testimony, Officer Low stated that he had two conversations with Taylor and that the second conversation was the one that was recorded. Further, when describing this second conversation, Officer Low recalled that Taylor had asked for the second interview and requested that arrangements be made so that he could take a polygraph test during the second interview, that Taylor drove himself to the police station, that Taylor was never placed under arrest during the interview, that Taylor was never read his *Miranda* rights, that Taylor was interviewed by three different police officers over a period of approximately three to four hours, and that Taylor never asked to talk to a lawyer. Regarding the length of the interview, Officer Low estimated that the polygraph lasted approximately one and a half hours of the total interview, that he interviewed Taylor after he finished the polygraph, and that his interview with Taylor lasted approximately 30 minutes. In addition, Officer Low explained that none of the officers told Taylor that he was obligated to stay in the interview room; on the contrary, Officer Low testified that all three officers told Taylor that no matter what he said that day, he was not going to be arrested. Furthermore, Officer Low explained that Taylor had previous experience with the criminal justice system and had been imprisoned for the sexual assault of a minor. Moreover, although Officer Low admitted that he never expressly told Taylor that he was free to leave at any time, Officer Low testified that Taylor kept his keys to his car and "could have left at any time." In fact, Officer Low testified that Taylor left after the interview was over and was not arrested until several days later.

17

At the end of the suppression hearing, the district court made the following findings[4] when denying the motion to suppress:

> Based upon the totality of the circumstances, the fact that the defendant voluntarily presented himself, the defendant was there at his request to apparently take a polygraph -- the officer's testimony I find credible that the defendant maintained his keys. He was free to leave at any point in time. The fact that he wasn't arrested until several days subsequent. The arrest warrant was not obtained until the next day is what the evidence is. Based on that totality of the circumstances, I don't even find four hours to be a long interview with three different officers. And, I mean, apparently he was told repeatedly. Also, he's an experienced person in the criminal justice system, having been in prison before. That gives him even more opportunity to know what his rights are than if this was his first encounter. For all those reasons, I will deny your request.

When called to the stand during the trial, Officer Low testified that Taylor kept his keys and cell phone during the interview, that the interview was "a noncustodial interview," and that Taylor left the police station after the interview.[5] A video of the interview by Officer Low was

---

[4] "When the voluntariness of a statement is challenged, a trial court is required to make findings with regard to its determination," but that requirement is deemed complied with "if the court dictates its findings and conclusions to the court reporter and those findings are made part of the appellate record." *Vasquez v. State*, 179 S.W.3d 646, 654 (Tex. App.—Austin 2005), *aff'd* 225 S.W.3d 541 (Tex. Crim. App. 2007).

[5] On appeal, Taylor contends that there is evidence that he might have been coerced into making the statements at issue. When making this assertion, Taylor seems to be referring to a portion of Officer Low's testimony in which Officer Low related that he told Taylor at some point that if he kept lying, "I'm going to hammer your ass and you're going to end up going to prison for life." That statement is not present on the video admitted as an exhibit, but our examination of the video reveals that Officer Low did not seem to become irritated by some of the perceived inconsistencies in Taylor's statement until well after Taylor freely admitted to having committed the extraneous offense at issue as well as having touched G.S. in an inappropriate sexual manner on other occasions. *See Rian v. State*, No. 03-07-00599-CR, 2009 Tex. App. LEXIS 6378, at *11 (Tex. App.—Austin Aug. 11, 2009, pet. ref'd) (mem. op., not designated for publication) (noting that police conduct during interview "may escalate an initially voluntary inquiry into custodial interrogation").

18

admitted as an exhibit during the trial. For admission purposes, the video was edited to remove portions occurring before and after the interview by Officer Low that were not relevant to the issues during trial, and Taylor did not object to the admission of the shortened video. The video is approximately 30 minutes in length and is generally consistent with Officer Low's testimony during the trial and during the suppression hearing. In particular, the video shows that Officer Low told Taylor that he would not be arrested that day no matter what he said to the police, that Taylor never requested to stop the interview, and that no attempts were made to prevent Taylor from leaving or to pressure him to stay.[6]

As summarized above, during the suppression hearing and during the trial, no evidence was presented establishing that Taylor was either physically or mentally ill when he made the statements, that he was on any medication or other drugs when he made the statements, that he lacked the mental capacity to understand the statements that he was making or the consequences from making those statements, or that those statements were not voluntarily made. On the contrary, even though Taylor was not expressly told that he could leave at any time during the interview, the

---

[6] On the video, Taylor does state that an "attorney just told me that, uh, by her age limit I go to prison for life," but Taylor never requested to talk to an attorney or stated that he was represented by counsel. Moreover, as set out above, Taylor went to the police station voluntarily after asking the officers to arrange a polygraph exam, was told that he would not be arrested that day, and retained his car keys and cell phone. *Cf. id.* at *11-12 (explaining that when defendant accepted invitation to voluntarily answer questions at police station, defendant's reference to attorney did not transform interview into custodial interrogation and stating that officers had no obligation under Fifth Amendment to honor request for attorney if defendant was not in custody); *see also State v. Scheffield*, No. 03-12-00669-CR, 2014 Tex. App. LEXIS 13831, at *17 (Tex. App.—Austin Dec. 30, 2014, no pet.) (mem. op., not designated for publication) (concluding that statement indicating that defendant did not know if he wanted to continue non-custodial interview without talking to lawyer first did not obligate police officers to stop interview).

19

evidence indicated that the second interview was scheduled at Taylor's request, that he drove himself to the interview, that he had his keys and cell phone during the interview, that he was told that he would not be arrested, that no attempts were made to keep him from leaving, and that he had prior experience with law-enforcement interactions from a previous arrest and conviction for a similar offense. *Cf. Estrada v. State*, 313 S.W.3d 274, 298 (Tex. Crim. App. 2010) (determining that recording did not raise state-law claim of involuntariness because, in part, defendant "understood that he was free to leave at any time during the police interrogation"). Moreover, evidence was introduced establishing that Taylor left the police station at the end of the interview and was not arrested until a few days later.

Regarding Taylor's contention that he made the statements without being given his *Miranda* warnings, we note that an accused is not entitled to *Miranda* warnings unless he is in police custody at the time that the statements are made, *State v. Scheffield*, No. 03-12-00669-CR, 2014 Tex. App. LEXIS 13831, at *13 (Tex. App.—Austin Dec. 30, 2014, no pet.) (mem. op., not designated for publication), and nothing in the record in this case supports a determination that Taylor was in custody at the time that he made the statements at issue, *see Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996) (explaining that suspect is in custody when he is physically deprived of freedom, when he is told that he cannot leave by law-enforcement personnel, when law-enforcement personnel create situation in which reasonable person would believe that his freedom of movement has been restricted, and when law-enforcement officials "manifest[] to the suspect" that probable cause to arrest exists but do not tell suspect that he is free to leave under circumstances that would lead reasonable person to believe that he is under restraint in manner similar to arrest).

20

Moreover, we believe that Taylor's reliance on our prior opinion in *Vasquez* is misplaced. In *Vasquez*, Vasquez denied having committed the crime for seven hours in an interview with the police before admitting to having killed the victim, 179 S.W.3d at 650-54, but in the present case, Taylor admitted to committing the extraneous offense and to touching G.S. in an inappropriate sexual manner relatively early on in his interview with Officer Low. Furthermore, although Taylor notes that his interaction with the police lasted for several hours, the length of the interview was in part due to the fact that Taylor had requested to take a polygraph exam during the prescheduled interview, and Officer Low explained that he interviewed Taylor after Taylor finished the polygraph.

In addition, although Taylor notes that Vasquez also freely drove to the police station, unlike the current case, the police in *Vasquez* took custody of Vasquez's car keys and did not return the keys for several hours, and the police asked Vasquez to remove his boots when he attempted to leave and did not return the boots. *Id.* at 652-54. Furthermore, unlike Taylor, Vasquez repeatedly asked to go home, to see his wife, and to call his wife, but the officers "ignored his requests and changed the subject or gave an off-putting excuse to delay Vasquez," including stating that he could not go inside his home because the police were searching it. *Id.* at 651-52. Moreover, although the police informed Vasquez that the door was unlocked and that he could leave at any time, the police, unlike the police questioning Taylor, "effectively block[ed] the door" and moved their chairs close to Vasquez, "crowding him in the far corner of the interview room." *Id.* at 650, 652. Perhaps most importantly, unlike the current case, when the police officers questioned Vasquez, he communicated his "problems with depression," mentioned the medication that he was currently taking, and discussed that he had attempted to commit suicide several times, and the police told Vasquez that

21

they would get him the medication that he needed if he told them what happened. *Id.* at 653; *see also*

*Oursbourn*, 259 S.W.3d at 181 (relying on evidence that suspect was suffering from mental-health

symptoms when he made statement as support for affirming appellate court's determination that

defendant should have been given instruction regarding voluntariness).

In light of the preceding, we must conclude that a reasonable jury could not have

determined that the facts above rendered Taylor unable to make voluntary statements and that the

evidence relied on by Taylor, without more, was insufficient to warrant an instruction on voluntariness.

For all of these reasons, we conclude that the district court did not err by denying Taylor's request

for an instruction on voluntariness, and we overrule Taylor's third issue on appeal.

**Admission of Video Recording of Taylor's Statement to Police**

In his fourth issue on appeal, Taylor contends that the district court erred by failing

to grant his motion to suppress the video recording discussed above. When presenting this issue,

Taylor repeats his assertions from the previous issue and argues that the video should have been

suppressed under article 38.22 of the Code of Criminal Procedure because his statement was not

voluntary. *See* Tex. Code Crim. Proc. art. 38.22. As proof of this assertion, Taylor again argues that

he was subjected to a lengthy interview by the police, that he was never told that he could leave, and

that the police never gave him his *Miranda* warnings.[7]

---

[7] Unlike the last issue, in this issue, Taylor explicitly refers to the fact that on the video he told Officer Low that a lawyer had told him that he could go to prison for life for this offense. In light of this statement, Taylor urges that he "discussed his lawyer with his interrogators" but that the police never offered to end the interview or to allow him to call his lawyer. However, the video was not played for the district court prior to the court making its ruling on the motion to suppress. Moreover, although Taylor's trial attorney mentioned during her argument in the pretrial hearing that

22

"Appellate courts review a trial court's ruling on a motion to suppress by using a bifurcated standard, giving almost total deference to the historical facts found by the trial court and analyzing de novo the trial court's application of the law." *State v. Le*, 463 S.W.3d 872, 876 (Tex. Crim. App. 2015). Under that standard, the record is "viewed in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)); *see also id.* (explaining that trial court's ruling on motion to suppress will be upheld if it is correct on theory of law applicable to case regardless of whether trial court based its ruling on that theory). Moreover, the trial court is the exclusive and sole judge of the credibility of the evidence and witnesses presented during the suppression hearing, "particularly where the motion is based on the voluntariness of a confession," and "great deference is accorded to the trial court's decision to admit or exclude such evidence." *Delao v. State*, 235 S.W.3d 235, 238 (Tex. Crim. App. 2007).

---

"there was mention of a lawyer," the only evidence before the court at the time of its ruling regarding any discussion of a lawyer was Officer Low's testimony that Taylor did not ask to talk to a lawyer or mention a lawyer. *See Black v. State*, 362 S.W.3d 626, 635 (Tex. Crim. App. 2012) (providing that "appellate review of [a trial court's] ruling on the motion to suppress is ordinarily limited to that evidence presented at the pretrial hearing—the evidence that was before the court at the time of its decision"). In addition, Taylor asserts that the police induced him into making the statements by telling him that he would not be arrested that day no matter what he said. However, no evidence or argument regarding this concern was presented to the district court during the pretrial hearing. Moreover, to the extent that the district court could have been concerned that those types of statements by police officers might serve as an improper inducement, that potential concern would likely have been alleviated by the testimony establishing Taylor's prior involvement with the criminal justice system.

23

Accordingly, the trial court's ruling will only "be overturned on appeal where a flagrant abuse of discretion is shown." *Id.*

As set out earlier, when the district court denied Taylor's request to suppress the video after convening a hearing on the voluntariness of the statements, the district court found that Officer Low's testimony was credible and that Taylor voluntarily attended the interview to perform a polygraph, retained possession of his keys, was free to leave, did leave, was not arrested until days later, and had previous experience with law-enforcement personnel that gave him a better understanding of what his rights were. Moreover, the district court determined that the length of the interview was not problematic under the circumstances. Accordingly, the district court concluded that the statements were voluntarily made.

During the suppression hearing, as discussed earlier, Officer Low testified that Taylor asked the officers to schedule the interview so that he could take a polygraph, that Taylor drove himself to the interview, that none of the officers placed Taylor under arrest, that Taylor never asked for a lawyer, that Taylor retained custody of his car keys during the interview and could have left at any time, that all of the officers told Taylor that he was not going to be arrested that day no matter what he said, that the officers did not read Taylor his *Miranda* rights because he was not in custody, and that Taylor was allowed to leave at the end of the interview. Moreover, Officer Low explained that Taylor had previous experience with law enforcement from his prior arrest and conviction for a similar offense and that although he did not specifically state that Taylor was free to go, Taylor knew that he was free to leave because he drove himself there and had his keys and because he was told that he would not be arrested.

24

In addition, no evidence was introduced that any of the officers attempted to prevent Taylor from leaving in any way or that Taylor was not competent or was incapacitated at the time of the interview. Furthermore, although Officer Low testified that the interview lasted between three and four hours, he estimated that one and a half hours of that time was taken up by the polygraph that Taylor requested and that his portion of the interview lasted around 30 minutes and took place right after Taylor took the polygraph. Finally, although Taylor complains that he was not given his *Miranda* warnings, nothing in the record before the district court during the pretrial hearing indicated that the interview was a custodial interrogation. *See Dowthitt*, 931 S.W.2d at 255; *see also Scheffield*, 2014 Tex. App. LEXIS 13831, at *11-13 (determining that interview was not custodial interrogation where defendant voluntarily drove to police station, was told that he could leave at any time, was never physically restrained, and was allowed to leave at end of interview).

In light of the record before the district court when it ruled on the motion to suppress and in light of the district court's role in making that ruling, we cannot conclude that the district court abused its discretion by determining that the statements were voluntarily made and by denying Taylor's motion to suppress. *See Wyatt v. State*, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000) (explaining that determination regarding whether statement is voluntary is made based on totality of circumstances). Accordingly, we overrule Taylor's fourth issue on appeal.

**Evidence Concerning Polygraph**

In his fifth issue on appeal, Taylor argues that the district court abused its discretion by failing to grant his request for a mistrial after testimony regarding the fact that he took the polygraph was presented to the jury. *See Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App.

25

2010) (providing that appellate courts review trial court's denial of motion for mistrial under abuse-of-discretion standard of review); *see also Robinson v. State*, 550 S.W.2d 54, 58-61 (Tex. Crim. App. 1977) (reversing conviction where State elicited testimony that only witness tying defendant to murder had taken *and* passed lie detector test); *Martines v. State*, 371 S.W.3d 232, 250 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (explaining that testimony regarding polygraph examination's existence or results is inadmissible for any purpose because polygraphs are inherently unreliable and have tendency to unduly persuade jurors). Before the trial started, Taylor filed a motion in limine asking the district court to order the State not to mention, among other things, "[a]ny participation [by Taylor] in a polygraph test or its results." The State agreed, and the district court granted the request.[8] During the trial, Officer Low was called to the stand to discuss Taylor's interview with the police. After the State asked Officer Low if he "reschedule[d] for another interview at a later time," Officer Low responded that Taylor "asked for a polygraph. He said, 'I want to take a polygraph.'" Immediately after Officer Low made the statement, Taylor objected, and the district court sustained the objection and instructed the jury to "disregard any mention or consideration of [a] polygraph." Taylor also moved for a mistrial, but the district court denied that request.

---

[8] In his motion, Taylor argued without citation to authority that evidence of "participation in a polygraph [is] highly prejudicial in that it influences the jury to convict the Defendant for being a criminal generally, rather than for being guilty of the offense on trial." On appeal, Taylor suggests that because the district court granted his motion in limine, his assertion that mentioning the polygraph would be prejudicial to the case became "the law of the case." Accordingly, Taylor insists that the fact that his desire to submit to a polygraph was mentioned automatically deprived him of a fair trial. However, Taylor does not cite any authority for this proposition. Moreover, even assuming that a trial court could order that any violation of a motion in limine would result in an automatic mistrial, we are not persuaded by the record before us that the district court in this case evidenced that intention when it granted the motion in limine.

26

As summarized above, Officer Low made the statement regarding the polygraph after being asked whether he attempted to reschedule the interview, and nothing in the remainder of the record indicates that the State anticipated that Officer Low would mention Taylor's desire to take a polygraph test in his response. Shortly after Officer Low mentioned Taylor asking for a polygraph test, a bench conference was called to discuss Taylor's objection. During the hearing, the State indicated that it had instructed Officer Low not to mention the polygraph and asked for permission to "instruct my witness again." Moreover, Officer Low apologized for making the statement.

Recently, in *Cade v. State*, the court of criminal appeals analogized an "unanticipated answer" mentioning a polygraph exam to "cases in which a bystander or witness made a spontaneous outburst that interfered with the normal proceedings of a trial." No. AP-76,883, 2015 Tex. Crim. App. Unpub. LEXIS 156, at *50 (Tex. Crim. App. Feb. 25, 2015) (not designated for publication); *see also id.* at *53 (explaining that record did not support finding that prosecutor's question was designed to elicit answer regarding polygraph or that prosecutor could have anticipated answer). In light of this analogy, the court stated that a trial court's instruction to disregard will generally be sufficient to cure any harm because courts "presume that the jury will follow those instructions," *id.* at *51, and later determined that the defendant had failed to overcome the presumption that the trial court's instruction to disregard was sufficient to cure any harm where the evidence supporting the jury's determination was substantial; where the reference to the polygraph result was "brief, unsolicited, and concerned an extraneous matter"; and where "the State did not attempt to capitalize on the reference." *Id.* at *54; *see also Martines*, 371 S.W.3d at 250 (noting that mere mention of polygraph examination does not automatically constitute reversible error).

Although the statement in *Cade* was made during the punishment phase rather than the guilt or innocence phase as in this case, 2015 Tex. Crim. App. Unpub. LEXIS 156, at *53, we believe that the analysis from *Cade* still has applicability to the facts here. The evidence supporting Taylor's guilt was substantial because he admitted to committing the crimes during his interview with the police and because the video of that admission was played for the jury. *See Reynolds v. State*, No. 13-13-00072-CR , 2013 Tex. App. LEXIS 15216, at *12 (Tex. App.—Corpus Christi Dec. 19, 2013, pet. ref'd) (mem. op., not designated for publication) (concluding that instruction to disregard was sufficient to cure any alleged error where, among other things, there was other evidence incriminating defendant, including videotape of interview of defendant by police). Moreover, Officer Low's reference to the polygraph was brief, and perhaps most importantly, Officer Low did not disclose the results of the polygraph and simply related that Taylor communicated that he wanted to take a polygraph test. *See Martines*, 371 S.W.3d at 251 (relating that instruction to disregard will generally be sufficient to cure any error resulting from testimony mentioning polygraph when results are not revealed); *Buckley v. State*, 46 S.W.3d 333, 336 (Tex. App.—Texarkana 2001, pet. ref'd, untimely filed) (explaining that if "a witness gives a nonresponsive answer that mentions a polygraph test," courts consider whether the results were revealed and that there is generally no error in refusing to grant mistrial if results are not revealed). In addition, nothing in the record indicates that the State was attempting to elicit any mention of a polygraph examination or its results when it was questioning Officer Low,[9] and the State made no

---

[9] On appeal, Taylor notes that at the time of the trial, Officer Low had 21 years of law-enforcement experience and urges that "it is logical to infer" that an officer with that many years of service will have experience "testifying in criminal cases and following the evidentiary rulings

28

mention of the polygraph throughout the remainder of the trial. *Cf. Buckley*, 46 S.W.3d at 337 (noting that there may be error in refusing to grant mistrial even when results were not disclosed if questions asked by State were designed to elicit response regarding polygraph and if effect of evidence was to impeach defensive theory or bolster State's case).

In light of the preceding, we cannot conclude that the district court abused its discretion by failing to grant Taylor's request for a mistrial. *Cf. Hinojosa v. State*, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999) (explaining that in general "a mistrial is only required when the improper evidence is 'clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury'" (quoting *Hernandez v. State*, 805 S.W.2d 409, 414 (Tex. Crim. App. 1990))). Accordingly, we overrule Taylor's fifth issue on appeal.

**Pen Packets**

In his sixth issue on appeal, Taylor asserts that the district court abused its discretion "by allowing into evidence pen-packs which contain information regarding how parole law and good-time credit have been specifically applied to" him in the past. *See Davis*, 329 S.W.3d at 803 (providing that appellate courts review ruling regarding admission of evidence for abuse of discretion). As mentioned previously, Taylor pleaded not true to the enhancement allegations, and

---

of the court while testifying." From these propositions, Taylor seems to imply that Officer Low's testimony regarding the request for a polygraph could not have been inadvertent. However, Officer Low did not testify regarding any prior experience as a witness, and as discussed previously, nothing in the record before this Court supports the idea that the State was acting in bad faith when it questioned Officer Low.

the State introduced the pen packets as an exhibit as proof of those allegations. The exhibit contains information regarding Taylor's prior convictions in Illinois, shows when Taylor was incarcerated, lists the imposed sentences, and chronicles when Taylor was actually released from incarceration.

On appeal, Taylor argues that although juries are permitted to consider the existence of parole law when assessing punishment, *see* Tex. Code Crim. Proc. art. 37.07, § 4, juries are not permitted to consider how parole law will be applied to a particular defendant, *see Hawkins v. State*, 135 S.W.3d 72, 84 (Tex. Crim. App. 2004); *Harwood v. State*, 961 S.W.2d 531, 544 (Tex. App.—San Antonio 1997, no pet.). Moreover, Taylor contends that admitting the pen packets without redacting the portions showing how parole had previously been applied to Taylor essentially invited the jury to improperly consider parole in its punishment calculation.

After the exhibit was admitted, neither party referred to the portions of the exhibit indicating that Taylor had previously been released on parole, and no argument was made that the parole information in the exhibit should be used for determining the punishment at issue in this case. *Cf. Helleson v. State*, 5 S.W.3d 393, 398 (Tex. App.—Fort Worth 1999, pet. ref'd) (considering whether there was error when during its closing State told jury to consider parole law and instructed jury to "do the math" for parole in that case). Moreover, the record reveals that the State's purpose in presenting the pen packets along with the testimony authenticating the packets was to establish the enhancement allegations that Taylor had previously been convicted. *Cf. Mata v. State*, No. 13-02-00218-CR, 2008 Tex. App. LEXIS 3907, at *7-8 (Tex. App.—Corpus Christi May 22, 2008, pet. dism'd) (not designated for publication) (overruling issue asserting that defendant's trial counsel did not provide effective assistance of counsel when counsel failed to object to State's reference to pen packet during punishment phase because court determined that pen packet was not introduced

as evidence on operation of parole and instead was introduced as evidence of enhancement allegations of prior crimes). For these reasons, we cannot conclude that the district court abused its discretion by admitting the portions of the pen packets chronicling when Taylor was released from custody for his prior convictions.

Furthermore, although we need not address the matter further, we do not believe that Taylor would be able to establish that the alleged error resulted in the requisite degree of harm needed to reverse the conviction and remand for a new punishment hearing. *See* Tex. R. App. P. 44.2(b) (explaining that for non-constitutional errors in criminal cases, error must be disregarded unless it affected defendant's substantial rights); *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim App. 2004) (stating that erroneous admission of evidence is non-constitutional error). During the punishment phase, neither side referred to the information in the pen packets suggesting that Taylor had previously been released on parole. Moreover, although the district court imposed a life sentence on Taylor, that sentence was mandated after the jury determined that Taylor had previously been convicted of aggravated criminal sexual abuse in Illinois because that offense was substantially similar to a conviction under Texas law for the offense of sexual assault of a child, *see* Tex. Penal Code § 12.42(c)(2)(B), and Taylor did not contest the evidence presented by the State establishing that he committed the offenses listed in the pen packet or that his prior conviction was substantially similar to the offense of sexual assault of a child, *see id.* § 22.011 (proscribing offense of sexual assault).[10]

---

[10] In particular, an investigator for the State, Michelle Blindert, testified that she compared the fingerprints from Taylor, Taylor's social security number, and Taylor's tattoos with those from the individual that was the subject of the pen packets and determined that Taylor was the individual discussed in the pen packets. Further, the pen packets contained photos of the individual that was

For all of these reasons, we overrule Taylor's sixth issue on appeal.

## CONCLUSION

Having overruled all of Taylor's issues on appeal, we affirm the district court's judgments of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed:   October 14, 2015

Publish

---

previously incarcerated in Illinois, and Blindert explained that she compared Taylor's booking photo for the offense in question with the photos from the pen packets and that the photos were a match. In addition, Blindert explained that when Taylor was previously convicted of aggravated criminal sexual abuse, the state of Illinois proved that he "placed his penis in the vagina of" a victim who was between the ages of thirteen and seventeen years old and that Taylor was at least five years older than the victim. After Blindert finished her testimony, the State called Randy Ortega, who testified that he works for the Department of Public Safety and makes determinations regarding whether a defendant's conviction in another jurisdiction for an offense is substantially similar to a sex offense in Texas for the State's sex-offender-registration program. In his testimony, Ortega explained that the crime of aggravated criminal sexual abuse as proscribed by the state of Illinois is substantially similar to the Texas offense of sexual assault of a child. *See* Tex. Penal Code § 22.011 (setting out elements of offense of sexual assault).