

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00229-CR

_____

CHRISTOPHER WILLIAM TEMPLIN, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 235th District Court
Cooke County, Texas
Trial Court No. CR15-00170

Before Gabriel, Kerr, and Pittman, JJ.
Memorandum Opinion by Justice Gabriel

## MEMORANDUM OPINION

Appellant Christopher William Templin appeals from his conviction for injury to a child and resulting sentence of seventy-five years' confinement. In four issues, he argues that the trial court erred by allowing the complainant's mother, the complainant's grandfather, a caseworker for the Department of Family and Protective Services (DFPS), and the complainant's therapist to testify regarding the complainant's "hearsay outcry statements." In his final two issues, Templin contends that the trial court erred by denying his request to conduct a voir dire examination of the investigating officer and that the presiding judge did not have authority to preside over his trial. Because none of these arguments were preserved for our review, we affirm the trial court's judgment.

## I. BACKGROUND

### A. THE OFFENSE

Templin does not challenge the sufficiency of the evidence to support his conviction; therefore, we recount the facts only as necessary to put his appellate issues in context. Angela lived with her two children, Samuel and Lisa.[1] Templin also lived with Angela, and her children and would occasionally watch Samuel while Angela was at work.

---

[1] We use aliases to refer to the complainant and his relatives. *See* Tex. R. App. P. 9.8 cmt., 9.10; 2d Tex. App. (Fort Worth) Loc. R. 7.

On February 2, 2015, Angela spent time with Templin before leaving for work at 4:00 p.m. Angela left Templin in charge of her children. When Angela returned home from work at 10:00 p.m., Samuel was in bed and told her that his feet hurt. Angela then saw that his feet were "all red." Angela and Kathy Brown, Samuel's paternal grandmother,[2] took Samuel to a hospital the next day where it was determined that his feet had been severely burned and his left foot apparently had been held down "in scalding hot water." Samuel also had bruises on a large portion of his body, including on his penis. Samuel's elevated enzyme content indicated that his bruising was the result of "significant blunt force trauma to his muscles." Medical personnel concluded that Samuel's injuries were the result of "significant traumatic injuries and child physical abuse."

Based on the hospital's report, DFPS became involved and sent Samuel to a child-advocacy center for a forensic interview on February 12, 2015. But in the interview, Samuel never said who had hurt him.

### B. PRETRIAL

A grand jury indicted Templin with intentionally or knowingly causing Samuel serious bodily injury by burning his feet—a first-degree felony. *See* Tex. Penal Code Ann. § 22.04(a)(1), (e). The indictment also included a repeat-offender paragraph based on Templin's 2013 conviction for the felony offense of burglary of a habitation,

---

[2]Samuel's father—Kathy's son—had died in 2011.

increasing the available punishment range to "imprisonment . . . for life, or for any term of not more than 99 years or less than 15 years." *Id.* § 12.42(c)(1); *see also id.* § 12.32 (setting punishment range for first-degree felonies). The State filed a notice of its intent to use the testimony of Aaron Brown, Samuel's paternal grandfather, regarding Samuel's outcry statement when Samuel was hospitalized after his injuries:

> [Aaron] will testify that on either February 3, 2015 or February 4, 2015, he was in the child's hospital room along with [Kathy] . . . . While the adults in the room were having a conversation, the child blurted out, "he was giving me a bath and it was too hot, then he started hitting me." [Aaron] then asked [Samuel] who was giving him a bath, to which [Samuel] replied, "Chris."

*See* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(1). Templin moved to suppress this statement as inadmissible hearsay but never requested a hearing on this motion before trial or otherwise argued his suppression motion in the trial court. Given these facts, the trial court did not rule on the motion.

Before trial, Templin moved to recuse the presiding judge, Judge Janelle M. Havercamp. Templin argued that Judge Havercamp had a bias that would make fair judgment impossible (1) because she had presided over DFPS's suit affecting the parent-child relationship regarding Angela and Samuel, in which DFPS alleged child endangerment,[3] and (2) because Judge Havercamp had rejected the State and

---

[3]Based on Samuel's injuries, DFPS removed Samuel from Angela's custody. Angela, Kathy, and Aaron agreed that they would have joint managing conservatorship of Samuel and that Kathy and Aaron would determine where Samuel would live and go to school.

Templin's plea agreement based on her knowledge of DFPS's action. *See* Tex. R. Civ. P. 18b(b)(1)–(3); *DeLeon v. Aguilar*, 127 S.W.3d 1, 5 (Tex. Crim. App. 2004) (orig. proceeding). Judge Havercamp declined to recuse herself and forwarded the motion to the regional presiding judge. *See* Tex. R. Civ. P. 18a(f). The regional presiding judge assigned Senior Judge Jerry W. Woodlock "to preside in the motion to recuse . . . from [December 20, 2016,] until plenary jurisdiction has expired or the [regional presiding judge] has terminated this assignment in writing, whichever occurs first." After a nonevidentiary hearing, Judge Woodlock denied the motion to recuse on January 5, 2017. Judge Woodlock presided over Templin's June 2017 trial.

## C. THE TRIAL

At trial, Angela testified that Samuel told her Templin hurt him. Templin's hearsay objection to this statement was overruled. Angela then testified that she believed Samuel was afraid of Templin because of "[t]he things that [Samuel] says." Templin did not object to this. Aaron also testified, with no objection by Templin, that Samuel appeared to be afraid of Templin because he "associates that [February 2] incident with Chris." Samuel's therapist similarly stated that Samuel happily told her that he remembered telling his DFPS caseworker that "Chris didn't kill [him]." During his subsequent cross-examination of the caseworker, Templin questioned her about Samuel's statement that Templin had not killed him. The caseworker stated that Samuel seemed proud that he "overcame."

Michael Warren, the lead investigator on the case, was designated as an expert witness on "crime scene reconstruction, child abuse [and] immersion burns" by the State. Warren testified to the likely causes of Samuel's injuries and why the non-injured portions of his body had been "spared" injury because they had been covered. Templin objected to Warren's testimony and asked to conduct a voir dire examination of Warren "to see how he knows what [sparing] is indicative of." The trial court denied the request.

The jury found Templin guilty of the indicted offense, found the enhancement paragraph true based on Templin's plea of true, and assessed his punishment at seventy-five years' confinement. The trial court entered judgment in accordance with the jury's verdict. Templin's verified motion for new trial and in arrest of judgment was deemed denied. *See* Tex. R. App. P. 21.8(c), 22.4(b).

### D. THE APPEAL

On appeal, Templin argues in his first four issues that the trial court abused its discretion by allowing Angela, Aaron, Samuel's therapist, and Samuel's DFPS caseworker to testify to Samuel's hearsay outcry statements. He contends in his sixth issue that Judge Woodlock lacked authority to preside over his trial because the regional presiding judge's order of assignment had expired by its own terms.

His fifth issue is more difficult to identify. In his issues-presented portion of his brief, Templin contends that the trial court erred by not allowing him to impeach Angela with her police and DFPS interview videos. But in the argument portion of

6

his brief for issue five, Templin substantively asserts that the trial court erred by denying his request to question Warren outside the jury's presence about the underlying facts to support his expert conclusions "as to the method and cause of injuries" to Samuel. We will address his fifth issue as he substantively briefed it— whether the trial court erred by denying Templin's request to voir dire Warren. *See, e.g., Merrick v. State*, Nos. 02-17-00035-CR, 02-17-00036-CR, 2018 WL 651375, at *4 (Tex. App.—Fort Worth Feb. 1, 2018, pet. ref'd).

## II. PRESERVATION OF ERROR

### A. OUTCRY STATEMENTS

We first turn to Templin's attack on the admission of Samuel's outcry statements through four different witnesses. Templin concedes that Samuel's statements to Aaron were admissible as Samuel's "first" outcry statement. *See* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a)(2). Based on this concession, we overrule issue two directed to the admission of Aaron's outcry testimony.

Templin also asserts that the trial court incorrectly applied article 38.072 by allowing Angela, the therapist, and the caseworker to testify to the same outcry, which was inadmissible hearsay. As we have indicated, Templin failed to object on any basis to the therapist's testimony about Samuel's "he didn't kill me" outcry and affirmatively elicited the caseworker's testimony about the same statement. Templin cannot complain of this evidence because he failed to object to the therapist's testimony on the basis of hearsay and because he elicited the same evidence through

7

his cross-examination of the caseworker. *See* Tex. R. App. P. 33.1(a)(1); Tex. R. Evid. 103(a)(1); *Ohler v. United States*, 529 U.S. 753, 755–58 (2000); *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992); *Holland v. State*, 802 S.W.2d 696, 699–700 (Tex. Crim. App. 1991).

And although Templin objected to the hearsay nature of Angela's testimony about Samuel's outcry, the same or similar evidence was admitted elsewhere over no objection; thus, Templin failed to preserve error on this issue as well. *See Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *Sandoval v. State*, 409 S.W.3d 259, 287 (Tex. App.—Austin 2013, no pet.). To the extent Templin argues that the State and the trial court failed to comply with article 38.072's procedural requirements for admission of these statements, *see* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b), he never alerted the trial court that he believed those requirements had not been met, thereby waiving any error for our review. *See Taylor v. State*, 509 S.W.3d 468, 472–74 (Tex. App.—Austin 2015, pet. ref'd); *Garcia v. State*, 228 S.W.3d 703, 707 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). We overrule issues one, three, and four.

### B. VOIR DIRE EXAMINATION UNDER RULE 705(B)

In his fifth issue, Templin asserts that the trial court abused its discretion by refusing to allow him to conduct a voir dire examination of Warren about "how he knows" what the locations of Samuel's injuries indicated. *See* Tex. R. Evid. 705(b). During Warren's testimony about "sparing"—the lack of injury to parts of Samuel's

body—Templin asked to question him "to see how he knows what that is indicative of." This request was denied. Templin then unsuccessfully objected that Warren "was not an expert to say [Samuel's burns were] consistent with" his foot being placed on something hot.

Templin's request and objection were insufficient to alert the trial court that he wanted a hearing outside the jury's presence to determine the facts upon which Warren based his expert opinion under rule 705(b). *See, e.g.*, *Jenkins v. State*, 912 S.W.2d 793, 813–14 (Tex. Crim. App. 1993) (op. on reh'g); *Wooten v. State*, No. 03-11-00667-CR, 2013 WL 1831571, at *3–5 (Tex. App.—Austin Apr. 24, 2013, pet. ref'd) (mem. op., not designated for publication); *Garner v. State*, No. 05-10-00195-CR, 2011 WL 3278533, at *3–4 (Tex. App.—Dallas Aug. 2, 2011, no pet.) (mem. op., not designated for publication). In fact, Templin's arguments could have been construed to be an objection to Warren's qualifications as an expert, which is not subject to the requirement of a voir dire examination. *See* Tex. R. Evid. 702. Accordingly, Templin failed to preserve this complaint for our review. *See Alba v. State*, No. 02-13-00345-CR, 2014 WL 5802294, at *8 (Tex. App.—Austin Nov. 7, 2014, no pet.) (mem. op., not designated for publication).

Further, even if Templin's request and objection were specific enough to trigger the hearing requirement found in rule 705(b), similar evidence was admitted through the testimony of Samuel's treating physician, rendering any error arising from the lack of a rule 705(b) hearing harmless. *See* Tex. R. App. P. 44.2(b); *Blackburn v.*

9

*State*, No. 07-09-0031-CR, 2010 WL 2802186, at \*4–5 (Tex. App.—Amarillo July 16, 2010, no pet.) (mem. op., not designated for publication); *Hernandez v. State*, No. 14-07-00124-CR, 2008 WL 2262046, at \*5–6 (Tex. App.—Houston [14th Dist.] May 29, 2008, pet. ref'd) (mem. op., not designated for publication).  We overrule issue five.

## C.  AUTHORITY OF PRESIDING JUDGE

Judge Woodlock presided over Templin's trial as an assigned judge ostensibly under an assignment order that provided the assignment was for the purposes of presiding over Templin's motion to recuse "until plenary jurisdiction has expired or the [regional presiding judge] has terminated this assignment in writing, whichever occurs first."  In his sixth issue, Templin asserts that because the assignment order had expired on its own terms, Judge Woodlock did not have authority to preside over his trial, rendering his conviction "a nullity."  As with his other issues, Templin never voiced an objection to Judge Woodlock presiding over his trial.  Contrary to Templin's apparent argument, the authority of an assigned judge to preside over a trial may not be raised for the first time on appeal.  *See Wilson v. State*, 977 S.W.2d 379, 380 (Tex. Crim. App. 1998).  This argument was not preserved for our review, and we decline Templin's invitation to "issue mandamus, should it be deemed proper."  We overrule issue six.

## III.  CONCLUSION

Because Templin procedurally defaulted each of his appellate complaints, we affirm the trial court's judgment.  *See* Tex. R. App. P. 43.2(a).

10

/s/ Lee Gabriel

Lee Gabriel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  January 24, 2019