

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00174-CR

ANTONIO M. SAN JUAN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 47344-A

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

## MEMORANDUM OPINION

A Gregg County jury found Antonio M. San Juan guilty of one count of aggravated assault and one count of indecency with a child. In accordance with the jury's assessment, the trial court sentenced San Juan to fifty years' imprisonment for the aggravated assault charge and twenty years' imprisonment for the indecency charge and ordered the sentences to run consecutively.

On appeal, San Juan argues that the trial court erred by failing to suppress evidence of his confession and by rejecting his requested Article 38.22 jury-charge instruction. He also argues that the evidence was legally insufficient to support the jury's finding of guilt. We find that the trial court did not err in denying San Juan's suppression motion, that the evidence is legally sufficient to support the jury's verdict, and that there is no error in the jury charge. However, we also find that the judgment must be modified to reflect the correct age of the child victim. As modified, we affirm the trial court's judgment.

## I. The Trial Court Did Not Err in Denying San Juan's Suppression Motion

San Juan consented to taking a polygraph examination because he believed it would clear him of the allegations. A post-polygraph interview resulted in his oral confession and a written statement memorializing the oral confession. San Juan filed a motion to suppress oral statements he made during his interview on the ground that they were "involuntary and were coerced." He also filed a motion to determine the admissibility of the written statement under Article 38.22 of the Texas Code of Criminal Procedure. After a hearing, the trial court denied both requests. On appeal, San Juan argues that the trial court's ruling was erroneous because he was not properly

2

admonished during his custodial interrogation in accordance with Texas law and did not understand the *Miranda*[1] warnings given to him because Spanish was his native tongue.

While we conclude that San Juan was in custody at the time of his confessions, we also conclude that the trial court correctly found that San Juan knowingly, intelligently, and voluntarily waived both *Miranda* and Article 38.22 rights prior to his confessions. As a result, we find that the trial court properly denied San Juan's suppression motion.

## A.    Standard of Review

Custodial interrogation places "'inherently compelling pressures' on the persons interrogated." *Thompson v. Keohane*, 516 U.S. 99, 107 (1995) (quoting *Miranda*, 384 U.S. at 467). "Prior to any [custodial] questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney." *Coffey v. State*, 435 S.W.3d 834, 841 (Tex. App.—Texarkana 2014, pet. ref'd) (quoting *Miranda*, 384 U.S. at 444). "Under both the Federal constitutional standard and the Texas Confession Statute, evidence obtained as a result of a custodial interrogation is inadmissible unless the State proves the officer gave proper warnings and shows an affirmative waiver of rights by the accused." *Id*. at 840 (quoting *Hutchison v. State*, 424 S.W.3d 164, 175 (Tex. App.—Texarkana 2014, no pet.) (footnote omitted) (citations omitted)); *see Miranda*, 384 U.S. at 444; *Carter v. State*, 309 S.W.3d 31, 35–36 (Tex. Crim. App. 2010) ("Failure to provide the warnings and obtain a waiver prior to custodial questioning generally requires

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

exclusion of statements obtained."); *see Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008).

Yet, "[a]n officer's obligation to administer *Miranda* warnings attaches . . . 'only where there has been such a restriction on a person's freedom as to render him "in custody."'" *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam)). Also, Article 38.22 constraints on use of an accused's statement only apply to custodial interrogations. *Wolfe v. State*, 917 S.W.2d 270, 282 (Tex. Crim. App. 1996). As a result, "[i]f an accused is not in custody when he makes a statement, then the question of voluntariness does not arise." *Id.* "Stationhouse questioning does not, in and of itself, constitute custody." *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996).

As explained by the Texas Court of Criminal Appeals,

> At trial, the defendant bears the initial burden of proving that a statement was the product of "custodial interrogation:" [sic]
>
>> The mere filing of a motion to suppress does not thrust a burden on the State to show compliance with *Miranda* . . . warnings *unless* and *until* the defendant proves that the statements he wishes to exclude were the product of custodial interrogation. Thus, the State has no burden at all unless "*the record as a whole clearly establishe*[*s*]" that the defendant's statement was the product of custodial interrogation by an agent for law enforcement. It is the defendant's initial burden to establish those facts on the record.

*Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007) (alteration in original) (quoting *Wilkerson v. State*, 173 S.W.3d 521, 532 (Tex. Crim. App. 2005)).

The United States Supreme Court has clarified that the question of whether an accused "is in custody turns on (1) a factual determination of the circumstances surrounding the interrogation

4

and (2) a legal determination of whether, under the factual circumstances, a reasonable person would feel that he was not free to terminate the questioning and leave." *Colvin v. State*, 467 S.W.3d 647, 657 (Tex. App.—Texarkana 2015, pet. ref'd) (citing *Thompson*, 516 U.S. at 112). "[T]he ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Id.* (quoting *Stansbury*, 511 U.S. at 322 (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam)).

"We review a trial court's denial of a motion to suppress for an abuse of discretion." *Elrod v. State*, 533 S.W.3d 52, 55 (Tex. App.—Texarkana 2017, no pet.). The trial court is the "sole and exclusive trier of fact and judge of the credibility of the witnesses" and evidence presented at a suppression hearing, especially when the motion to suppress is based on the voluntariness of a confession. *Delao v. State*, 235 S.W.3d 235, 238 (Tex. Crim. App. 2007); *Green v. State*, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996); *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Bizzarri v. State*, 492 S.W.2d 944, 946 (Tex. Crim. App. 1973). As a result, we give almost total deference to the trial court when reviewing its factual determination of the circumstances surrounding the interrogation. *Martinez v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011). Yet, "because the question of whether a reasonable person would feel that he was not free to terminate the questioning and leave is a mixed question of law and fact that does not depend on the trial court's credibility determination, we employ a de novo standard when evaluating this question." *Colvin*, 467 S.W.3d at 657 (citing *Thompson*, 516 U.S. 113–14; *State v. Saenz*, 411 S.W.3d 488, 490 (Tex. Crim. App. 2013)). "If the trial judge's decision is correct under any theory of law applicable to the case, the decision will be sustained." *Turner v. State*, 252 S.W.3d 571,

576 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (citing *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000)).

San Juan's argument on appeal is based on his conclusion that he was subjected to custodial interrogation at the time of his confession. We review the circumstances of the interrogation to better gauge this argument.

## B.    The Circumstances of the Interrogation

Benjamin Chase Bynog, a special agent with the Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives, testified that he was contacted by the Kilgore Police Department (KPD) to conduct a polygraph examination of San Juan before his interrogation on January 28, 2018.[2] After he learned that San Juan did not read English and that his native tongue was Spanish, Bynog read to San Juan "his *Miranda* rights . . . and his waiver and the consent form." Bynog admitted that he could not say whether someone who did not speak English as a first language would have "quite underst[ood] everything that was being said." Yet, he said that San Juan told him that he understood his *Miranda* warnings. San Juan's signature also appeared on a form that notified him of his *Miranda* rights in English. The form included the following admonishments and waiver:

- You have the right to remain silent.
- Anything you say can be used against you in court.
- You have the right to talk to a lawyer before we ask you any questions and to have a lawyer with you during questioning.
- If you cannot afford a lawyer, one will be appointed for you if you wish before any questioning begins.
- If you decide to answer any questions now without a lawyer present, you have the right to stop answering at any time.

---

[2]The examination occurred in an interrogation room at the KPD.

Waiver

> I have read this statement of my rights or it has been read to me, and I understand these rights. At this time I am willing to answer questions without a lawyer present. No promises or threats have been made to me, and no pressure or force of any kind has been used against me.

Bynog testified that San Juan also consented to taking the polygraph examination. A separate form for written consent for the polygraph contained San Juan's signature.

According to Bynog, San Juan had difficulty understanding certain questions and terms and expressed particular confusion about words related to the male and female sexual organs. Although it was common practice to use a translator where needed, Bynog testified that a translator was not used with San Juan. Instead, when San Juan expressed confusion over a word, Bynog "would stop, clarify, and acknowledge him to make sure he understood." Bynog "used different techniques" and asked San Juan to "use his own words" to demonstrate "that he was comprehending what [Bynog] was saying." Yet, Bynog said there were several times during the interview when San Juan would answer a question in the affirmative even when he did not understand the question. As an example, to the question, "What's your favorite color," San Juan answered, "Yeah." Nevertheless, Bynog believed San Juan understood his *Miranda* warnings and other admonishments because, in his opinion, San Juan spoke "very good English."

A three-hour and twenty-five-minute audio recording of both the polygraph and the interrogation were admitted for the trial court's review at the suppression hearing. The audio recording supported Bynog's testimony that he read San Juan his *Miranda* warnings, that San Juan spoke English fairly well, and that he consented to taking a polygraph examination. Prior to questioning, Bynog also received San Juan's affirmation that he understood what Bynog was

7

saying, and the recording showed that San Juan's confusion regarding terminology was resolved before the polygraph examination started. San Juan's responses to Bynog's questions also demonstrated his understanding of the English language.

Both before and during the polygraph, San Juan repeatedly denied the allegations and said he was speaking to Bynog to clear his name. Even though polygraph-examination results are inadmissible, Bynog, during the interrogation, told San Juan he had failed the polygraph and needed to come clean. Bynog characterized the polygraph as a tool used to extract San Juan's confession, but clarified that there was no coercion or force used to obtain San Juan's confession. As a result of Bynog's post-polygraph interrogation, San Juan orally confessed and dictated and signed a statement written by Bynog, which read:

> This statement was dictated by me and written by Special Agent Chase Bynog. A few years ago, . . . I walked past the room where [Jane Doe] was laying in bed without her clothes on. I walked into the room. [Jane Doe] attempted to grab my penis. I then dropped to my knees and began eating [Jane Doe] out. I did this for approximately 5–10 minutes. I also rubbed her pussy with my hand for about 1–2 minutes. On a different occasion, I walked into the room she was in to make sure she was asleep. She had her eyes closed so I lowered my head to hers. She grabbed my head and we kissed for approximately one minute.

Bynog testified, and audio of the interrogation showed, that San Juan collaborated with him to ensure that the contents of the written statement were accurate. He pointed to strikeouts on the written statement that were initialed by San Juan as evidence of the collaboration.

## C. San Juan's Confession Occurred After Custodial Interrogation

Questioning conducted in a police station when an accused arrives voluntarily does not necessarily show that a suspect is "in custody," particularly when nothing indicates the accused's freedom to leave was restricted in any way. *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)

8

(per curiam).  There is no evidence that San Juan was under formal arrest or in restraints when he arrived at the police station for questioning.  Instead, the evidence showed that he wanted to speak to the police to clear his name.  For this reason, the State argues that San Juan was not in custody.

"Yet, 'the mere fact that an interrogation begins as noncustodial does not prevent custody from arising later; police conduct during the encounter may cause a consensual inquiry to escalate into custodial interrogation.'" *Colvin*, 467 S.W.3d at 657 (quoting *Dowthitt*, 931 S.W.2d at 255).  Four general situations that may constitute custody include:

> (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.

*Id*. (quoting *Dowthitt*, 931 S.W.2d at 255; *State v. Ortiz*, 382 S.W.3d 367, 376 (Tex. Crim. App. 2012)).[3]  "The 'reasonable person' is presumed to be innocent."  *Id*. (quoting *Dowhitt*, 931 S.W.3d at 254 (citing *Florida v. Bostick*, 501 U.S. 429, 438 (1991))).  Here, we focus on the fourth situation.

"The subjective beliefs of the detaining officer are not included in the calculation of whether a suspect is in custody."  *Ortiz*, 382 S.W.3d at 372–73.  "But if the officer manifests his belief to the detainee that he is a suspect, then that officer's subjective belief becomes relevant to

---

[3]The "first three [situations] 'indicate[] that the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention,'" *Colvin*, 467 S.W.3d at 657–58 (second alteration in original) (quoting *Dowthitt*, 931 S.W.2d at 255), while "the last [situation] 'dictates that the officer's knowledge of probable cause be manifested to the suspect . . . [and that] the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest.'" *Id.* at 658 (first alteration in original) (quoting *Dowthitt*, 931 S.W.3d at 255).

the determination of whether a reasonable person in the detainee's position would believe he is in custody." *Id.* at 373. "Conversely, any undisclosed subjective belief of the suspect that he is guilty of an offense should not be taken into consideration—the reasonable person standard presupposes an 'innocent person.'" *Id.* In short, custody is not established "unless the manifestation of probable cause 'combined with other circumstances' of the interview, such as duration or factors of 'the exercise of police control over [a suspect],' would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest." *Saenz*, 411 S.W.3d at 496 (alteration in original).

Here, Bynog informed San Juan of statements made by the child victim showing that she was sexually abused by him. Bynog also told San Juan that he had failed the polygraph examination and that, as a result, he knew without a doubt that San Juan had sexually abused the child. San Juan's confession was made after a back-and-forth interview in which Bynog told San Juan that he knew he was lying when he denied the allegations. The audio recording established that Bynog never told San Juan he was free to leave after the polygraph and that San Juan complied with a female officer's request to go with her at the end of the interview.

After reviewing the audio recording of the interrogation and the totality of the circumstances presented at the hearing, we conclude that San Juan met his initial burden to establish that he was in custody at the time of his oral confession. However, we also find that the evidence supported the trial court's conclusion that San Juan's oral and written confessions were made voluntarily and in compliance with *Miranda* and Article 38.22.

10

**D.       San Juan Waived His Rights Knowingly, Intelligently, and Voluntarily**

Once the defendant shows that he was in custody, the State "bears the burden of showing[, by a preponderance of the evidence,] that a defendant knowingly, intelligently, and voluntarily waived his . . . rights." *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010). "In examining the voluntariness of a custodial statement, the trial court 'must examine all of the circumstances and the course of police conduct.'" *Shepherd v. State*, 489 S.W.3d 559, 571 (Tex. App.— Texarkana 2016, pet. ref'd) (quoting *Carter v. State*, 309 S.W.3d 31, 41 (Tex. Crim. App. 2010) (citing *Oregon v. Elstad*, 470 U.S. 298, 318 (1985)). When a suppression motion questions the voluntariness of a confession, the trial court is the "sole and exclusive trier of fact and judge of the credibility of the witnesses." *Delao*, 235 S.W.3d at 238. As a result, this Court "give[s] great deference 'to the trial judge's decision to admit or exclude such evidence, which will be overturned on appeal only where a flagrant abuse of discretion is shown.'" *Shepherd*, 489 S.W.3d at 571 (quoting *Carter*, 209 S.W.3d at 42). Also, "[t]rickery or deception does not make a statement involuntary unless the method was calculated to produce an untruthful confession or was offensive to due process." *Id.* (quoting *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997)); *see Webb v. State*, 291 S.W.2d 331, 334 (Tex. Crim. App. 1956) (holding that the use of a polygraph as a means of interrogation does not violate an accused's constitutional rights or "render the written confession thereafter made involuntary").

On appeal, San Juan does not argue that the confession was the result of physical or mental compulsion or intimidation, coercion, or deception. San Juan also acknowledges that Bynog obtained his signature on a written form containing the required *Miranda* warnings but argues that

11

a language barrier required an interpreter to ensure that the waiver was voluntary.  For the same

reason, San Juan argues that Bynog did not comply with Article 38.22.  As to the written statement,

Article 38.22 states, in relevant part:

> Sec. 2.  No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that:
>
> (a)     the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.17 of this code or received from the person to whom the statement is made a warning that:
>
> (1)     he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
>
> (2)     any statement he makes may be used as evidence against him in court;
>
> (3)     he has the right to have a lawyer present to advise him prior to and during any questioning;
>
> (4)     if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
>
> (5)     he has the right to terminate the interview at any time; and
>
> (b)     the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warning prescribed by Subsection (a) of this section.

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2.

As previously shown, Bynog's written form complied with *Miranda* and Section 2 of

Article 38.22.  In fact, San Juan's brief fails to argue that the form contains any deficiency.  Instead,

he claims that his waiver was unknowing and unintelligent because he did not read English or

speak English well.  However, we find that the audio recording of the interview and Bynog's

12

testimony supported the trial court's finding that San Juan understood and spoke English.  The evidence also showed that Bynog read the *Miranda* warnings to San Juan and that San Juan said he understood those warnings and had no questions about his rights.  Accordingly, San Juan's confessions were made in accordance with *Miranda* and Section 2 of Article 38.22.

With respect to his oral confession, San Juan argues that "[t]he recording . . . does not comport with 38.22 § 3."  Section 3 reads,

(a)     No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

    (1)     an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;

    (2)     prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning; [and]

    (3)     the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered
. . . .

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3.  With respect to this section, San Juan merely argues that the record is silent as to why the video camera was not turned on and that "the language difficulties alone made the statement involuntary."

We conclude that the trial court did not err in finding that Bynog complied with Section 3 of Article 38.22 because Section 3(a)(1) does not exclude audio recordings or require that all oral statements be visually recorded and because we have already concluded that the evidence supported the trial court's factual finding that San Juan did not have a language barrier that would render his waivers unintelligent, unknowing, or involuntary.  *See Paster v. State*, 701 S.W.2d 843,

13

846 (Tex. Crim. App. 1985). In sum, because we find that the trial court properly denied San Juan's suppression motion, we overrule his first point of error.

## II.    Legally Sufficient Evidence Supported the Jury's Verdict

In his second point of error, San Juan argues that the jury's verdict was not supported by legally sufficient evidence. "In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "Our rigorous legal sufficiency review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of

14

proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id*. (quoting *Malik*, 953 S.W.2d at 240).

Here, the State alleged that San Juan (1) committed aggravated sexual assault of a child by intentionally and knowingly causing the sexual organ of Jane Doe, a child younger than fourteen, to contact his mouth, and (2) committed indecency with a child by touching the genitals of Doe, a child younger than seventeen, with the intent to arouse or gratify his sexual desire.[4] San Juan argues that the evidence is legally insufficient to support the jury's findings of guilt on these counts.

Doe testified that she knew San Juan her entire life, lived next to him, and "was raped as a child" by him. Doe said that San Juan penetrated her vagina with his penis when she was in the seventh grade and had oral sex with her when she was in the eighth grade by placing his mouth on her vagina. Doe described these acts and the events leading up to them in detail and testified that one act occurred in her home while another occurred in San Juan's home. She also testified that San Juan's son, Pete, and his epileptic brother, Cole, were present but asleep during each specific encounter she described. Doe eventually notified her mother of the abuse in a letter that was admitted into evidence without objection. In the letter, Doe told her mother that she was abused by San Juan "every time [she] stayed the night" at his house.

Because the trial court found all evidence related to the polygraph inadmissible, Bynog's testimony at trial referenced only the post-polygraph interrogation. Bynog informed the jury that

---

[4]The jury acquitted San Juan of the allegation that he committed aggravated sexual assault of Doe by causing the penetration of her sexual organ with his sexual organ.

15

"San Juan admitted that he engaged in oral sex with [Doe] and that he also touched her vagina with his hand." Over San Juan's objection, his audio confessions to these acts, his waiver of *Miranda* rights, and his written confession were published to the jury. Bynog clarified that San Juan never admitted to an act of penetration.

Pete testified in San Juan's defense. Pete said that Cole required constant care as a result of his epilepsy and was watched either by him or his mother. Pete explained that they would take Cole to Doe's house on occasion, but clarified that San Juan was never in Doe's house during that time and was also never left alone with Doe in their home because he was always working. San Juan's ex-wife, Emily, provided similar testimony about San Juan's lack of opportunity to engage in the criminal acts and testified about her belief that San Juan was not the type of person who could have committed them. Kay Lynn Newbill, a detective with the KPD, testified that an examination performed by a Sexual Assault Nurse Examiner (SANE) did not reveal any physical evidence supporting the allegations.

San Juan's legal sufficiency argument focuses on the conflicting evidence presented by San Juan's son and ex-wife. He complains that in light of the conflicting evidence regarding his lack of opportunity to molest Doe and the jury's acquittal on the charge of aggravated sexual assault of a child by penetration, the evidence is insufficient to support the finding of guilt on the State's other two allegations. We disagree.

Doe testified that San Juan had oral sex with her when she was in eighth grade by placing his mouth on her vagina. Doe's letter to her mother stated that she had been molested by him several times. Bynog informed the jury that "San Juan admitted that he engaged in oral sex with

16

[Doe] and that he also touched her vagina with his hand." The State played for the jury San Juan's audio confession that he had touched Doe's vagina with his hand and had also "kissed" it. His written confession to these acts was also admitted.

"The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault or indecency with a child." *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd). Accordingly, Doe's testimony alone was sufficient to show that San Juan committed aggravated sexual assault of a child by causing her sexual organ to contact his mouth. We further find that Doe's letter to her mother stating that she was molested by San Juan, Bynog's testimony, and San Juan's confessions provided legally sufficient evidence to support the findings of guilt on both the aggravated sexual assault charge and the allegation that San Juan committed indecency with Doe by touching her genitals with the intent to gratify his sexual desire. Moreover, the jury was free to resolve the conflicting evidence from San Juan's son and ex-wife in the State's favor.

Viewing the evidence in a light most favorable to the jury's verdicts, we find that legally sufficient evidence supported the findings of guilt for aggravated sexual assault and indecency with a child. Therefore, we overrule San Juan's second point of error.

## III. There Is No Error in the Jury Charge

In his third point of error, San Juan argues that the court erred in overruling his request to introduce an Article 38.22, Section 6, general instruction in its jury charge. "We employ a two-step process in our review of alleged jury-charge error." *Murrieta v. State*, 578 S.W.3d 552, 554 (Tex. App.—Texarkana 2019, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim.

17

App. 1994)). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Id.* (quoting *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32)).

"[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." *Id.* (quoting TEX. CODE CRIM. PROC. ANN. art. 36.13). "A trial court must submit a charge setting forth the 'law applicable to the case.'" *Id.* (quoting *Lee v. State*, 415 S.W.3d 915, 917 (Tex. App.—Texarkana 2013, pet. ref'd) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14)). "The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application. It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and prevent confusion." *Id*. (quoting *Lee*, 415 S.W.3d at 917) (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007))).

Section 6 of Article 38.22 reads,

> Upon the finding by the judge as a matter of law and fact that the statement was voluntarily made, evidence pertaining to such matter may be submitted to the jury and it shall be instructed that unless the jury believes beyond a reasonable doubt that the statement was voluntarily made, the jury shall not consider such statement for any purpose nor any evidence obtained as a result thereof.

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6. San Juan requested a general voluntariness instruction under Article 38.22, Section 6, instructing the jurors that unless they "believe[d] beyond a reasonable doubt that the statement was made voluntarily . . . [they should] not consider such statement for any purpose nor any evidence obtained as a result thereof." *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6; *Oursbourn v. State*, 259 S.W.3d 159, 169 (Tex. Crim. App. 2008). Because San Juan's cross-examination of Bynog at trial established that San Juan had "an

18

issue with English" and that Bynog went over the waivers very quickly, he argued that the instruction was warranted as a result of a "language barrier." We do not believe that this evidence entitled San Juan to a general voluntariness instruction.

"If a reasonable jury could find that the facts, disputed or undisputed, rendered [a defendant] unable to make a voluntary statement, he is entitled to a general voluntariness instruction when he has raised a question of the voluntariness of his statement." *Taylor v. State*, 509 S.W.3d 468, 478 (Tex. App.—Austin 2015, pet. ref'd) (alteration in original) (quoting *Oursbourn*, 259 S.W.3d at 176). "The defendant has the burden of producing 'evidence at trial from which a reasonable jury could conclude that the statement was not voluntary,' and 'there is no error in refusing to include a jury instruction where there is no evidence before the jury to raise the issue.'" *Id.* (quoting *Vasquez v. State*, 225 S.W.3d 541, 545 (Tex. Crim. App. 2007)). Here, although San Juan showed that there was a language barrier, he provided nothing showing that the language barrier resulted in an involuntary confession.

At trial, Doe testified that San Juan spoke English and communicated with her in English. While Bynog admitted that San Juan did not understand some English words, he also explained to the jury the process that he used to ensure that San Juan was understanding him. There was no evidence at trial that San Juan did not understand the warnings Bynog issued to him.[5] On the two-minute recording played to the jury of San Juan's confession, San Juan told Bynog, in English, that Doe was lying down when he looked at her vagina and "kissed" it and touched it with his

---

[5]San Juan introduced no evidence at trial showing that he arrived at KPD involuntarily, was physically restricted during his interview, was threatened in any way, or was unable to leave after the interview.

19

hand. San Juan also denied, in English, that he had penetrated Doe's vagina because he knew it would hurt her.

As noted in *Taylor*,

> When discussing the type of evidence that would warrant an instruction regarding the voluntariness of a statement made to police, the court of criminal appeals has listed the following types of evidence as "fact scenarios that can raise a state-law claim of involuntariness" under article 38.22: evidence that the suspect "was ill and on medication and that fact may have rendered his confession involuntary"; "was mentally retarded and may not have" voluntarily, intelligently, and knowingly waived his rights; lacked the capacity to comprehend his rights; was intoxicated, did not know what he was signing, and mistakenly believed that [the] document signed was something other than a confession; "was confronted by the brother-in-law of his murder victim and beaten"; and "was returned to the store he broke into" so that he could be questioned by individuals who were armed with pistols. *Oursbourn*, 259 S.W.3d at 172–73 (internal citations omitted). Further, the court of criminal appeals has determined that evidence that a suspect was bipolar and was in a manic or depressed state at the time that the statement was made sufficed to raise a general voluntariness question under article 38.22 "because a reasonable jury could conclude, based on this evidence, that the statement was not voluntary." *Id*. at 181; *see also id*. at 173 (explaining that although "youth, intoxication, mental retardation, and other disabilities are usually not enough, by themselves, to render a statement inadmissible under Article 38.22, they are factors that a jury, armed with a proper instruction, is entitled to consider"); *Vasquez v. State*, 179 S.W.3d 646, 658 (Tex. App.—Austin 2005) (explaining that facts that weigh against voluntariness determination include "lengthy interrogation, threats of violence, and detention incommunicado without advice of counsel or friends" as well as accused's age, "low intelligence," and "lack of education"), *aff'd*, 225 S.W.3d 541.

*Id.* at 478–79. The evidence San Juan presented about his alleged language barrier at trial falls into none of these categories.[6] As a result, we must conclude (1) that a reasonable jury could not

---

[6]At trial, San Juan did not assert that the length of the interview or any other circumstances rendered his confession involuntary. In requesting the instruction, San Juan relied solely on his language barrier argument. While we limit our analysis to the argument San Juan made at trial in requesting the general voluntariness instruction, we note that *Taylor* concluded that a defendant's interview "over a period of approximately three to four hours" and lack of *Miranda* warnings at the beginning of the interview were insufficient evidence from which a jury could have concluded that defendant's confession was involuntary. *Taylor*, 509 S.W.3d at 479.

20

have determined that the facts San Juan elicited at trial regarding the alleged language barrier rendered him unable to make voluntary statements and (2) that his confusion over certain English words, without more, was insufficient to warrant an instruction on voluntariness.

We conclude that trial court did not err by denying San Juan's request for a general voluntariness instruction. We overrule San Juan's third point of error.

## IV. We Must Modify the Judgment

"This Court has the power to correct and modify the judgment of the trial court for accuracy when the necessary data and information are part of the record." *Anthony v. State*, 531 S.W.3d 739, 743 (Tex. App.—Texarkana 2016, no pet.) (citing TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd)). "The authority of an appellate court to reform incorrect judgments is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court." *Id.* (quoting *Asberry*, 813 S.W.2d at 529–30).

The State's indictment on the indecency charge alleged that Doe was younger than seventeen at the time of the offense, and the jury charge also stated that Doe was younger than seventeen. However, the trial court's judgment mistakenly states that the jury found that Doe was younger than fourteen at the time of this offense. Accordingly, we modify the trial court's judgment to reflect that Doe was younger than seventeen at the time of the offense of indecency with a child.

21

## V.    Conclusion

We modify the trial court's judgment to reflect that Doe was younger than seventeen at the time of the offense of indecency with a child.  As modified, we affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:    March 25, 2020
Date Decided:    April 15, 2020

Do Not Publish