

# NUMBER 13-19-00235-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

QUENTIN RIOS,                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                             Appellee.

### On appeal from the 319th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Justices Benavides, Hinojosa, and Silva
### Memorandum Opinion by Justice Benavides

By five issues, appellant Quentin Rios appeals his conviction for burglary of a building, a state jail felony. *See* TEX. PENAL CODE ANN. § 30.02(a)(3). Rios's conviction was enhanced to a second-degree felony based on prior convictions. *See id.* § 12.42. Rios argues that the trial court erred by (1) not allowing evidence regarding the lack of an insurance claim by the complainant; (2) admitting a surveillance video that lacked proper

authentication; and (3) allowing the State to reopen its case and introduce jail call evidence. Rios additionally argues that (4) the evidence was insufficient to support the verdict; and (5) his motion for new trial should have been granted. We affirm.

## I.  BACKGROUND

On March 7, 2018, Robstown police were called to Act-On Mobile[1] (Act-On) in reference to a burglary of its building that had occurred overnight. At trial, Carlos Cavazos Jr., the lead service technician, testified. Cavazos said when he arrived at work that morning that there were multiple tools and batteries missing from the tool room. Later, the workers realized there were tablets missing from the manager's office as well. Cavazos stated there did not appear to be any signs of forced entry on the premises. Workers noticed that phones were not properly hung up and the phone logs showed there had been numerous calls made between 12:46 a.m. to 12:58 a.m. when no one should have been at the business. Cavazos explained that the employees do not have permission to take tools home and no one stated they had removed tools from Act-On. On cross-examination, Cavazos said that the complainant, Brandon McClellan, the manager, no longer worked with Act-On. He explained that when Act-On was bought, some of the other branches of the business were closed, so they replaced the missing tools with tools from those locations. Cavazos was not aware if there was an insurance claim filed regarding the missing tools or not. He described the tools as "heavy duty" tools that used rechargeable battery packs and felt that if all the tools and battery packs had been removed in a tool bag, it would have been extremely heavy. Cavazos stated that McLellan

---

[1] Act-On Mobile was bought and under new ownership at the time of trial.

was the person who spoke with the police officers and he did not know if McLellan told officers about two recently terminated employees that would have still had the access codes to the business. He also said that McLellan was "typically" the last to leave and would lock the doors and gates. Cavazos did not know any of the phone numbers called from the work phone and did not know of any tools missing prior to March 7, 2018.

Pamela Banda, the manager of the Snappy Foods convenience store near Act-On, testified that her store has surveillance cameras both inside and outside the store. She stated she allowed police officers to download the video, that the video has a timestamp, and she was not working that evening. Banda stated that even though the video had a time stamp, the time shown was incorrect and off "about an hour" because of the time change.

Officer Monica Salinas of the Robstown Police Department was the first to arrive at Act-On on March 7, 2018. She stated that when she walked into the building, she did not see any signs of forced entry and she met with the manager of Act-On and created an inventory of what appeared to be missing. The inventory was an approximate list of items and she believed there were about ninety-six items listed. Officer Salinas also took some fingerprint lifts and a shoeprint impression while she was there. She said she also noticed that phone calls had been made on one of the work phones after business hours. McLellan mentioned to her that he had recently fired two employees and the lock combinations had not been changed since they had been terminated. Officer Salinas explained she did not personally follow up on the names because her reports were turned over to the investigations department to continue working on the case.

Next, Officer Michael Purnell from the Robstown Police Department testified that he obtained the Snappy Foods store surveillance video the following day. Rios objected that the proper predicate was not laid because the time was incorrect and thus the video should not be allowed into evidence. The trial court overruled his objection. Officer Purnell stated that the video time was forty-six minutes fast, which he determined based on watching video of himself entering the store and comparing it to his watch. Officer Purnell said when viewing the video, he saw a male walk towards the Snappy Foods store from "generally in the direction" of Act-On[2] at approximately 1:09 a.m., and enter the store carrying a "large red tool bag." He also testified that although fingerprints were collected at Act-On, there was an "oversight" at the police department due to a personnel change and the fingerprints were not analyzed. On cross-examination, Officer Purnell explained there was no way to analyze shoe prints, but the print collected appeared to be from a boot. He agreed that Rios, as seen in the surveillance video, was wearing sneakers. Officer Purnell walked around Act-On the following day, but he did not find any tools or bags in the area. He felt it would "be hard" to carry the number of items alleged to have been taken and did not think it would be "possible" to fit all the items on the inventory list into the tool bag he saw on the Snappy Foods store video. Officer Purnell also explained that he had not looked into the phone calls made from Act-On after hours until right before the trial, but that one of the numbers appeared to come back to a possible ex-girlfriend of Rios's. He also stated that he checked pawn shops in the area after the theft but did not find any of the tools taken and was unable to make further contact with McLellan because

---

[2] Officer Purnell testified that Snappy Foods had multiple surveillance camera angles. One of the cameras showed the outside area of the store and multiple cameras showed the inside areas of the store.

4

he would not return any of the phone calls.

Sergeant Arturo Gonzalez Jr., with the Robstown Police Department, testified that he had known Rios for over twenty years. Sergeant Gonzalez stated that Rios is homeless and "bounces around" to different places to live. He explained that he was asked to assist in the investigation. Sergeant Gonzalez said he ran the phone numbers found on the Act-On phone the day before he testified and found that at least one of the numbers was registered to an ex-girlfriend of Rios's, but he did no additional follow up regarding the phone numbers. He also agreed on cross-examination that just because a person had a similar bag does not mean they were involved in an offense.

After the State rested its case, it asked the trial court to reopen the evidence in order to present testimony regarding Rios's jail call history. Rios objected stating because the State had just obtained this information, it was akin to "trial by ambush." The trial court allowed Lieutenant Jay Worthington of the Nueces County Sheriff's Office to testify. He stated he was the custodian of the jail call records and that he had found there were multiple calls between Rios's inmate pin number, which is a number assigned to an individual inmate, and Rios's ex-girlfriend's phone number. Lieutenant Worthington also said he had just been asked to run the comparison earlier that same morning.

At the jury charge conference, Rios objected to the State's inclusion of an instruction regarding the law of parties. Rios stated there was no evidence presented that any other parties were involved in the alleged offense. The State countered that the instruction had been included based on Rios's questions to the witnesses. The trial court overruled the objection.

The jury found Rios guilty of burglary of a building. *See* TEX. PENAL CODE ANN. § 30.02(a)(3). The trial court found the enhancement paragraphs true and sentenced Rios to eight years' imprisonment in the Texas Department of Criminal Justice–Institutional Division. Rios filed a motion for new trial that was overruled by operation of law. This appeal followed.

## II.     SUFFICIENCY OF THE EVIDENCE

By his fourth issue, which we address first, Rios argues that the evidence was insufficient to support his conviction for burglary of a building. *See* TEX. PENAL CODE ANN. § 30.02(a)(3). As sub-issues to this argument, Rios also argues that his right to confrontation was violated when the State did not call McLellan, the complainant, as a witness and the law of parties instruction should not have been given.

The State argues that Rios's issues present nothing for review because they are multifarious. We choose to address the issues in our sole discretion.

### A.     Standard of Review and Applicable Law

In reviewing the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in

6

establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018); *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013). "Each fact need not point directly and independently to the guilt of a defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). We resolve any evidentiary inconsistencies in favor of the verdict, keeping in mind that the factfinder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Walker*, 594 S.W.3d at 335; *see* Tex. Code Crim. Proc. Ann. art. 38.04.

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *See Metcalf v. State*, 597 S.W.3d 847, 856 (Tex. Crim. App. 2020) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *Romano v. State*, 610 S.W.3d 30, 34 (Tex. Crim. App. 2020). The hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Walker*, 594 S.W.3d at 336.

Here, a hypothetically correct jury charge would state that Rios committed the offense, if without the effective consent of the owner, he entered the building and committed a theft. *See* Tex. Penal Code Ann. § 30.02(a)(3).

7

**B.      Discussion**

Rios argues that the evidence was legally insufficient to prove he committed the burglary of Act-On. However, circumstantial evidence can be as probative as direct evidence in establishing the elements of the offense. *See Nisbett*, 552 S.W.3d at 262. An owner can be someone who has a "greater right to possession of the property than the actor." TEX. PENAL CODE ANN. § 1.07(a)(35). Thus, ownership of property "may be proven in one of three ways: (1) title, (2) possession, or (3) a greater right to possession than the defendant." *Morrow v. State*, 486 S.W.3d 139, 164 (Tex. App.—Texarkana 2016, pet ref'd) (quoting *Alexander v. State*, 753 S.W.2d 390, 392 (Tex. Crim. App. 1988)). Possession means actual care, custody, control, or management. TEX. PENAL CODE ANN. § 1.07(a)(39). The expansive definition of an owner under the Texas Penal Code "give[s] ownership status to anyone with a rational connection to the property." *Morrow*, 486 S.W.3d at 164 (quoting *Ramirez v. State*, 429 S.W.3d 686, 688 (Tex. App.—San Antonio 2014, pet. ref'd)).

The State could establish the right of ownership through employees of the company. TEX. PENAL CODE ANN. § 1.07(a)(35); *Morrow*, 486 S.W.3d at 164. It presented evidence from Cavazos, the lead technician, who explained that the company owned the tools and no one was authorized to remove the tools from Act-On's premises. Cavazos as a lead employee, would have had the greater right to property owned by Act-On than a non-employee, and Cavazos stated that Rios had never worked there.

Additionally, the State's surveillance video evidence showed Rios entering a nearby store shortly after the burglary was thought to have occurred carrying a tool bag

similar to ones at Act-On. *See Nisbett*, 552 S.W.3d at 262. The jury could have inferred that Rios had the tool bag seen on the video because he took it from Act-On and then walked a short distance to the Snappy Foods store. Also, the testimony that phone calls made during hours that Act-On was closed to Rios's ex-girlfriend's number was further circumstantial evidence the jury could have considered. *See id.* The cumulative force of evidence that Rios was seen with a tool bag similar to the ones at Act-On, the fact that his ex-girlfriend's phone number was called multiple times from Act-On's phones at hours late into the night, and the later evidence that Rios called the same number using his inmate pin number was enough that the "cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Walker*, 594 S.W.3d at 335. We overrule Rios's fourth issue.

### III.  CONFRONTATION CLAUSE

By a sub-issue to his sufficiency issue, Rios claims his right to confrontation was violated when McLellan was not called as a witness. The first time Rios raised this contention was in his motion for directed verdict, which the trial court denied. However, as stated above, although McLellan was listed in the indictment as the complainant, the penal code defines ownership. *See* TEX. PENAL CODE ANN. § 1.07(a)(35). Because an owner can be someone who has a "greater right of possession of the property than the actor," and Rios was able to confront Cavazos on the witness stand, his right to confrontation was not violated. U.S. CONST. amend. VI; TEX. PENAL CODE ANN. § 1.07(a)(35); *Crawford v. Washington*, 541 U.S. 36 (2004). We overrule Rios's first sub-issue.

9

## IV. LAW OF PARTIES INSTRUCTION

By his other sub-issue, Rios argues the law of parties instruction should not have been included in the jury charge. Although the State included the instruction in its proposed jury charge, Rios objected to the inclusion at the jury charge conference. The State argued it included the instruction because of the arguments and questioning Rios had raised. *See Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999) ("In general, an instruction on the law of parties may be given to the jury whenever there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties.").

### A. Standard of Review

To analyze a jury-charge issue, we first need to decide if there was error. *Rodriguez v. State*, 456 S.W.3d 271, 280 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citing *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g)). Only if error is found, do we then consider whether an objection to the charge was made and analyze for harm. *Id.* "The degree of harm necessary for reversal depends upon whether the error was preserved." *Id.* (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)). If an "error was preserved with a timely objection . . . then the jury charge error requires reversal if the appellant suffered some harm as a result of the error." *Sanchez v. State*, 376 S.W.3d 767, 774 (Tex. Crim. App. 2012) (citing *Almanza*, 686 S.W.2d at 171). To establish harm, the "appellant must have suffered actual, rather than theoretical harm." *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008). Neither the State nor the appellant bears the burden on appeal to prove harm. *Reeves v. State*,

420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

## B. Applicable Law and Discussion

To determine whether a person is a party to an offense, courts "may look to 'events before, during, and after the commission of the offense.'" *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012) (quoting *Wygal v. State*, 555 S.W.2d 465, 468–69 (Tex. Crim. App. 1977)). Here, although the evidence was completely circumstantial that there could have been other actors involved, witnesses' testimony supported the theory. The amount of tools alleged to have been stolen would have been extremely heavy and unlikely to have been carried away at one time; there were no signs of forced entry, but there was evidence that many employees had the combinations to the gate locks and doors, including two who were recently terminated; the phone call logs inside Act-On showed multiple calls to Rios's ex-girlfriend, as well as some additional numbers; and a boot print was found at Act-On, while Rios was wearing tennis shoes in the surveillance video shortly after the burglary. Those events combined could lead to the inference that there were other persons involved in the burglary, therefore, warranting the law of parties instruction. The trial court did not error in the inclusion of the instruction and we overrule Rios's second sub-issue.

## V. ADMISSION OF EVIDENCE

By his first and second issues, Rios argues the trial court erred by not allowing evidence regarding the lack of an insurance claim by the complainant and by allowing a surveillance video into evidence that lacked proper authentication.

11

**A.    Standard of Review**

We review a trial court's ruling to admit evidence under an abuse of discretion standard. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005); *see Strickland v. State*, No. 13-16-00701-CR, 2020 WL 373072, *20 (Tex. App.—Corpus Christi–Edinburg Jan. 23, 2020, no pet.) (mem. op., not designated for publication). Such a ruling is upheld on appeal "if it is reasonably supported by the record and is correct under any theory of law applicable to the case." *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). Under this standard, a trial court's ruling will be deemed an abuse of discretion only if it is so clearly wrong as to lie outside the zone of reasonable disagreement or is arbitrary or unreasonable. *Taylor v. State*, 509 S.W.3d 468, 472 (Tex. App.—Austin 2015, pet. ref'd) (citing *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005); *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002)). This deferential standard of review requires appellate courts to view the evidence in the light most favorable to the trial court's ruling and not substitute its judgment for that of the trial court. *Riley v. State*, 378 S.W.3d 453, 458 (Tex. Crim. App. 2012).

Finding a piece of evidence to be relevant is the first step in a trial court judge's determination of whether the evidence should be admitted before the jury. *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016). Even though our rules favor the admission of all logically relevant evidence for the jury's consideration, the trial court is still in charge of making the threshold decision as to whether evidence is relevant or not, and its decision will not be disturbed on appeal unless it is clearly wrong. *Id.*

**B.      Insurance Claim Evidence**

A defendant has the right to put on his case-in-chief, but that right is not without limitations. *Id.* A defendant does not have an unfettered right to present evidence that has no relevance. *Id.* The Texas Court of Criminal Appeals has held that a "defendant has a fundamental right to present evidence of a defense as long as the evidence is relevant and is not excluded by an established evidentiary rule." *Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001) (citing *Chambers v. Mississippi*, 410 U.S. 284 (1973)). Only relevant evidence is admissible, and the trial court has the discretion to exclude irrelevant evidence. *Henley*, 493 S.W.3d at 83; *see* TEX. R. EVID. 402 ("Irrelevant evidence is not admissible".).

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Henley*, 493 S.W.3d at 83; *see* TEX. R. EVID. 401. Thus, to be relevant, evidence must be material and probative. *Henley*, 493 S.W.3d at 83. "If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial." *Miller*, 36 S.W.3d at 507. If no "issue" in the case could be influenced by the proffered evidence, then that evidence is irrelevant and thus inadmissible. *Montgomery v. State*, 810 S.W.2d 372, 375 (Tex. Crim. App. 1991).

Rios claimed that he wished to present evidence that the complainant, McLellan, did not file any claim with the business's insurance company, to show he could have had possible involvement. During Cavazos's testimony, Rios asked if an insurance claim was filed, but Cavazos stated he did not think so because they replaced the tools from other

locations of the business. During Officer Salinas's testimony, the following occurred:

Rios: Now, we made a chart the other day . . . . Now, I just wanted to kind of get a—see if we could get a value of those items that were missing or that were stolen in that burglary . . . .

State: Your Honor, I'm going to object at this time. That's not relevant—that's not relevant.

. . . .

Court: A couple of things you need. One, what's the point? Two, I don't know that she knows about the value of those tools.

. . . .

Rios: Well, the reason I was offering it was because the–she was the one who took the report, and I was—I had asked an earlier witness whether there had been an insurance claim filed and—

State: That's not relevant either.

Rios: And they testified there was no insurance claim filed. So, I mean, I—I would ask to be allowed to put up the value of these items.

Court: My deal is, what would be the point? What's the point in doing that?

. . . .

Rios: It would be—well, I would argue it would be to show that–to attack the credibility of the witness that said that there was no insurance claim filed as to all this large amount of money on these tools, but . . . .

State: Well, my argument there is that that witness didn't file the claim. I don't think he said no, I think he said "I don't know." "I don't think one was done, but I don't know." But either way, it's irrelevant to the elements of the offense.

Court: Yeah. I'm going to sustain the objection.

14

Although Rios argues he was not allowed to present his complete theory of the case, he was able to ask a previous witness if an insurance claim was made. Rios did not present how the evidence of additional testimony regarding an insurance claim through an offer of proof. *See* TEX. R. EVID. 103 ("If the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance is apparent from the context.").

Here, the evidence Rios wished to present through Officer Salinas, the value of the missing tools, was irrelevant and the lack of an insurance claim had been established through a prior witness. *See Henley*, 493 S.W.3d at 83. The trial court did not abuse its discretion by sustaining the State's objection. We overrule Rios's first issue.

## C. Video Evidence

Rios also argued that the video surveillance from the Snappy Foods store lacked proper authentication and was inadmissible. Texas Rule of Evidence 901 governs the authentication requirement for the admissibility of evidence: "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a). Authenticity may be established with evidence of "distinctive characteristics and the like," which include "the appearance, contents, substance, internal patterns, or other distinctive characteristics of an item, taken together with all the circumstances." *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018) (quoting TEX. R. EVID. 901). Conclusive proof of authenticity before allowing admission of disputed evidence is not required. *Id.* Rule 901 "merely requires some evidence sufficient to support a finding that

15

evidence in question is what the proponent claims." *Id.* (quoting *Reed v. State*, 811 S.W.2d 582, 587 (Tex. Crim. App. 1991)).

The State presented testimony from the Snappy Foods store manager, who was familiar with the surveillance system the store utilized. Banda even testified that the clock on the video was "off" due to the time changes, but stated her manager had not come to fix the issue. The State also asked Officer Purnell about the video. Officer Purnell explained that he was the person who downloaded the video and determined the clock to be off by forty-six minutes by using video of himself and his watch to compare the times. The testimony of those two witnesses was sufficient to fit the requirements of Rule 901. *See Fowler*, 544 S.W.3d at 848. Both witnesses were able to identify the video from the Snappy Foods store and explain its unique characteristic of the incorrect time stamp.

The trial court did not abuse its discretion by allowing the surveillance video into evidence. *See Riley*, 378 S.W.3d at 458. We overrule Rios's second issue.

## VI. RE-OPENING OF STATE'S CASE

By his third issue, Rios argues that the State should not have been allowed to re-open its case and introduce evidence of jail calls made.

### A. Standard of Review and Applicable Law

We review a trial court's decision on a motion to reopen evidence for an abuse of discretion. *Almaguer v. State*, 492 S.W.3d 338, 343 (Tex. App.—Corpus Christi–Edinburg 2014, pet. ref'd); *Smith v. State*, 290 S.W.3d 368, 373 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). The test for whether the trial court abused its discretion is whether the action was arbitrary or unreasonable. *Almaguer*, 492 S.W.3d at 343–44. A court "shall

16

allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to the due administration of justice." TEX. CODE CRIM. PROC. ANN. art. 36.02. "Due administration of justice" requires a showing that the evidence is more than just relevant–it must actually make a difference in the case. *Peek v. State*, 106 S.W.3d 72, 79 (Tex. Crim. App. 2003); *Almaguer*, 492 S.W.3d at 344. In other words, a judge is required to reopen the case if the evidence would materially change the case in the proponent's favor. *Peek*, 106 S.W.3d at 79.

## B.      Discussion

The State reopened its evidence to present a one-page jail call log that showed multiple phone calls made from Rios's inmate pin number to his ex-girlfriend's phone number. The ex-girlfriend's phone number was the same number the State alleged appeared on the phone logs at Act-On. In a case that relied on circumstantial evidence, the phone evidence (along with the surveillance video) was critical to the State's case. *See Peek*, 106 S.W.3d at 79. Rios objected prior to the testimony by stating it was a "trial by ambush," a violation of article 39.14 of the code of criminal procedure, and the witness was not listed on the State's witness list. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14. However, Rios did not file a request for the State to disclose its witnesses or an article 39.14 discovery request prior to trial. The State explained to the trial court that it planned to just introduce the call log, not any of the information contained in the calls.

Even if Rios had filed a request for the State's witness list, any error from the lack of inclusion of the list would have been "made harmless" by his failure to object and move for a continuance. *See Barnes v. State*, 876 S.W.2d 316, 328 (Tex. Crim. App. 1994); *see*

17

*also Sustaita v. State*, No. 13-19-00015-CR, 2020 WL 1858320, \*4 (Tex. App.—Corpus Christi–Edinburg April 9, 2020, no pet.) (mem. op., not designated for publication). Additionally, Rios argues in his brief that he was not afforded enough time to listen to the jail calls or determine if other inmates used Rios's pin number, and because of that it was a trial by ambush. However, again, Rios did not request a continuance at any point after the State made its request to reopen.

Therefore, the trial court did not abuse its discretion in allowing the State to reopen its case and present additional evidence. *See Almaguer*, 492 S.W.3d at 343. We overrule Rios's third issue.

### VII. MOTION FOR NEW TRIAL

By his fifth issue, Rios alleged the trial court erred by denying his motion for new trial without holding a hearing.

### A. Standard of Review and Applicable Law

A defendant has a right to move for a new trial. *Hamilton v. State*, 563 S.W.3d 442, 448 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). A defendant does not, however, have an "absolute right to a hearing on his motion for new trial." *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). We review a trial court's ruling on a motion for new trial under an abuse-of-discretion standard. *Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020). We will reverse only if the trial court's ruling falls outside the zone of reasonable disagreement. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). The failure to hear the motion constitutes an abuse of discretion only if the motion and accompanying affidavits (1) raise matters which are not determinable from the record,

18

and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief. *Id.* at 338–39.

The defendant must support the motion for new trial with one or more affidavits that set forth the factual basis for the relief sought. *Id.*; *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003). A defendant is not entitled to a hearing on his motion for new trial unless he establishes the existence of reasonable grounds showing that he could be entitled to relief. *Smith*, 286 S.W.3d at 339. Thus, as a prerequisite to a hearing when the grounds listed in a motion for new trial are based on matters not already in the record, the motion is required to be supported by an affidavit, either by the defendant or someone else, specifically setting out the factual basis for the claim. *Id.*; *Bahm v. State*, 219 S.W.3d 391, 395 (Tex. Crim. App. 2007). The affidavit need not establish a prima facie case, or even every component legally required to establish relief. *Smith*, 286 S.W.3d at 339. It is sufficient if a fair reading of the affidavit gives rise to reasonable grounds in support of the claim. *Id.* But affidavits that are conclusory in nature and unsupported by facts do not provide the requisite notice of the basis for the relief claimed; thus, no hearing is required. *Id.*

## B. Discussion

Rios filed his motion for new trial and claimed:

> the trial court erred by dismissing a juror and replacing the dismissed juror without seeking or obtaining consent form [sic] the parties or attorneys on the case. Counsel for [Rios] became aware of the error only after conferring with the deputy clerk of the court after she discovered the error following sentencing. Counsel for [Rios] brought the error to the Courts [sic] attention immediately and had a hearing to secure the testimony of the clerk of the court on the issue as soon as practicable and on the following day during the 9 am docket.

WHEREFORE, PREMISES CONSIDERED, [Rios] hereby specifically requests that the Court grant an actual hearing on this Motion in the instant cause and that subsequent to the hearing of said Motion that [Rios] be restored to the position he was in before the trial of this case.

However, there was no affidavit attached to his motion or any indication on the trial court's docket, presented to this Court as part of the clerk's record, that a hearing was requested or any testimony had been presented during the trial court's morning docket. Based on the evidence before us, we find that no hearing was held, and the motion was overruled by operation of law. *See* TEX. R. APP. P. 21.8.

Because Rios's motion for new trial did not follow the procedural requirements set forth when alleging facts not contained in the record, the trial court did not abuse its discretion by not conducting a hearing and allowing the motion to be overruled by operation of law. *Smith*, 286 S.W.3d at 339; *Hobbs*, 298 S.W.3d at 199; *see Gonzalez*, 616 S.W.3d at 594. We overrule Rios's fifth issue.

## VIII.   CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
10th day of June, 2021.